Tarlton Pearrow v. Guy A. Thompson, Trustee of the Missouri Pacific Railroad Company, a Corporation, Appellant.—121, S. W. (2d) 811.

Division One, November 19, 1938.

*Thos. J. Cole* for appellant.

*C. O. Inman* for respondent.

HYDE, C.—This is an action for $10,000 damages for personal injuries. The jury found for defendant. Thereafter, the court sustained plaintiff's motion for a new trial on the ground that certain instructions, given at the request of defendant, "were erroneous, misleading and prejudicial to the plaintiff." Defendant has appealed from this order.

Defendant contends that any error in instructions is immaterial because plaintiff was guilty of contributory negligence as

a matter of law and, therefore, defendant was entitled to a directed verdict. We state the facts shown by the evidence, considered most favorably to plaintiff's case, for the purpose of ruling this contention. Plaintiff testified that he was struck by a string of five cars while he was crossing defendant's switch track at a public road crossing at Deerfield, Arkansas. Plaintiff's home was in Memphis, Tennessee. He was employed there as a switchman on the Illinois Central, but owned farm land at Deerfield. In 1933, he was unable to get planting begun until July because of high water. He had three tenants (James Steelman, Shelby Steelman, and A. D. Smallwood) living on his farm and farming on shares. Plaintiff stayed on the farm that year during July and August, and farmed some of the land himself. Deerfield had no station and only one switch track. The main line track ran north and south and was graded seven or eight feet above the surrounding country. The switch track, which was used principally for loading logs, ran south from the main line track down the embankment ("comes down pretty steep") to the lower level of the fields, and ended without any connection at the south with the main line track. There was a public road running east and west which crossed the main line track embankment south of the switch and crossed the switch track at a point south of the steepest part of its grade. Just south of the point where the road crossed the switch track, there was a loading boom for loading logs into cars. This was on plaintiff's land and he was paid one dollar per car by the logging contractor for its use. The logs were loaded into open coal cars. Every morning, except Sunday, a local freight train would pick up loaded cars and set out empty cars north of the road crossing. As these were needed at the loading boom, they could be uncoupled and allowed to run down by force of gravity upon releasing the brakes.

Plaintiff claimed that he was injured about 5 o'clock on Saturday afternoon, August 19, 1933, by a string of five of these empty coal cars getting loose and running down the grade of the switch track, striking and dragging him, while he was crossing at the public road crossing carrying a small harrow, weighing 40 or 50 pounds. Plaintiff's corn had been laid by that morning and he put in the afternoon gardening on the east side of the tracks where he lived. Plaintiff decided that, before he quit for the day, he would do some work in a small patch of sweet potatoes on the east side of the tracks. He went across to the west side of the railroad to borrow Shelby Steelman's harrow and mule for this purpose. Plaintiff first hitched the mule to the harrow and intended to have it dragged across the track, "because it was easier to take it over with the mule than it was to carry it." Steelman objected, saying: "You are liable to catch the teeth in the track and tear it up." Plaintiff then decided

that he would carry the harrow on his back and Steelman agreed to lead the mule to the potato patch, about 150 yards away. Plaintiff unhitched the mule, got the harrow on his back with the frame across his shoulders, teeth up, and began carrying it stooped over with his head down. He said that he knew that there was no train due, but that he stopped at the main line track and made certain that there was no train or engine in sight coming in either direction before he crossed it. He then went on between the two tracks and onto the switch track crossing without looking again. Just as he was within a step or two of the switch track Steelman, walking behind him with the mule, yelled, "Look out!" Plaintiff turned to look toward Steelman and was struck by the cars running down the grade. His clothing was caught by a journal box dragging him into a pile of dirt, where his clothing was torn loose, and the cars went on, running into a partly loaded car under the loading boom. Plaintiff's evidence was that an examination of the cars afterwards showed that all the brake chains were hanging down loose, indicating that none of the hand brakes had been set.

Plaintiff testified that switching crews "are supposed to always set the hand brakes." He said:

"On any track that is being used for industry work, when cars are placed on these tracks they are supposed to be, and usually are, made secure also by air brakes, but if those pistons are dirty, . . . rust or something getting inside of them, it would practically hold those open enough that this air would leak off. If they are new, however, they will hold quite a few hours, but if they are not new some of them leak off in thirty minutes or an hour. . . . When the air leaks off there is nothing to hold them except the handbrakes."

Plaintiff had seen these five cars set out by the local that morning shortly before noon. The log loading crew had quit work that day at noon and left on this local as was their custom on Saturdays. Plaintiff's evidence showed that no one had been around the cars since they had been set out. He said he had been in the vicinity (from 10 to 150 feet) of these cars all afternoon. The testimony of defendant's local freight crew was that they did set the hand brakes on all of these cars. It was admitted that the cars did run down and block the crossing on this occasion. Defendant's version was corroborated by Shelby Steelman and his father James Steelman, who said he was sitting on his porch on the west side of the tracks. Defendant, however, had the evidence of Smallwood and his wife that plaintiff was not in the vicinity of the crossing at the time. It was also shown that cars did run down and block the crossing on the other occasions after the time plaintiff claimed to have been injured and plaintiff on cross-examination testified: "Q. Had you ever known those cars to come down before? A. Yes, sir, they had

come down once or twice before. Q. You knew that? A. Well, I had been told that they did. I never saw them come down before, but I had been told that on one or two occasions cars had got loose and come down there before and blocked the crossing."

Defendant relies upon the cases "which hold that one who approaches a railroad track, and by looking can see an on-coming train, is guilty of contributory negligence as a matter of law if he goes upon the track and is struck." [State ex rel. Kansas City Southern Railroad Co. v. Shain, 340 Mo. 1195, 105 S. W. (2d) 915; see, also, Monroe v. Chicago & Alton Railroad Co., 297 Mo. 633, 249 S. W. 644, 257 S. W. 469; State ex rel. Hines v. Bland (Mo.), 237 S. W. 1018; Evans v. Illinois Central Railroad Co., 289 Mo. 493, 233 S. W. 397; Kelsay v. Mo. Pac. Railroad Co., 129 Mo. 362, 30 S. W. 339; Hayden v. M., K. & T. Railroad Co., 124 Mo. 566, 28 S. W. 74.] Plaintiff says that the same rule applies to a switch track, citing Henderson v. St. L.-S. F. Railroad Co. (Mo. App.), 248 S. W. 987, affirmed 314 Mo. 414, 284 S. W. 788. However, we have here a different kind of switch track from the one considered in the Henderson case or in Morrow v. Hines, 233 S. W. 493, cited therein. This track was connected with the main line only at the north end. The main line track was high above the surrounding country and plaintiff could and did see that there was no train or engine on either track and none did come. Plaintiff knew that the five coal cars had been stationary on the switch track for five or six hours. He had passed over the crossing below them only a few minutes before on his way to get Steelman's mule and harrow. If we consider the evidence most favorable to plaintiff, it is at least a reasonable inference that they were not moving when he looked up and down the track before crossing the main line. Even though plaintiff had heard "that, on one or two occasions, cars (set out on the switch) had got loose and come down there before," it would be at least a jury question, if he saw them stationary, as to whether he should have anticipated that they might get loose and start rolling between the time he walked from the main line to the switch track. We hold that it was proper for the trial court to submit the issue of contributory negligence to the jury.

Instructions claimed to be erroneous, misleading and prejudicial are Numbers 5, 6 and 7. Defendant's answer, in addition to a general denial, set up as a defense contributory negligence on the part of plaintiff, as follows: "That he saw or could have seen the car with which he came in contact, if any, in time, by the exercise of ordinary care on his own part, to have avoided contact therewith and thus avoided being injured."

Instead of requiring the jury to find the facts alleged, or any other facts of plaintiff's conduct, in order to find a verdict for defendant

on the basis of this defense, the only instruction given by the court submitting the issue of plaintiff's negligence was Number 5, which was as follows:

"If you believe and find from the evidence that the injuries to the plaintiff were caused by the joint, mutual and concurring negligence of the plaintiff and defendant, and that the negligence of neither, without the concurrence of the negligence of the other, as defined in these instructions, would have caused such injuries, then the plaintiff is not entitled to recover, and your verdict must be for defendant."

The general and undefined terms of this instruction, together with the cryptic partisan way of stating the proposition, might well have caused the trial court to consider that its effect was misleading. [See Boland v. St. L.-S. F. Railroad Co. (Mo.), 284 S. W. 141.] Contributory negligence is, of course, an affirmative defense with the burden of proof on the defendant to establish facts which will show it. Therefore, defendant "cannot have, in such case, a (general) negligence instruction." [Watts v. Moussette, 337 Mo. 533, 85 S. W. (2d) 487, and cases cited.] An instruction, on a plaintiff's contributory negligence, "is too general" and "amounts to what is commonly termed a roving commission" when "it fails to advise the jury or point out in any way, what acts or omissions on the part of plaintiff, if any, found by them from the evidence would constitute contributory negligence." [Clason v. Lenz, 332 Mo. 1113, 61 S. W. (2d) 727; Schide v. Gottschick, 329 Mo. 64, 43 S. W. (2d) 777; Bobos v. Krey Packing Co., 317 Mo. 108, 296 S. W. 157; Owens v. McCleary, 313 Mo. 213, 281 S. W. 682; Hanke v. St. Louis (Mo.), 272 S. W. 933, and cases cited; Lunsford v. Macon Produce (Mo. App.), 260 S. W. 781.] These authorities say that this is prejudicial to plaintiff because it permits the jury to find contributory negligence against plaintiff "on any theory of negligence which they could construct or evolve out of their own minds." They further hold that the error in giving such a general instruction is not waived by plaintiff's main instruction containing a requirement, in addition to the facts essential to a verdict in his favor, for a finding to the effect that plaintiff was at the time exercising ordinary care. (Or the highest degree of care in automobile cases.) Such a requirement in plaintiff's instruction merely informs the jury as to the degree of care imposed on plaintiff. [As to waiver see King v. Rieth, 341 Mo. 467, 108 S. W. (2d) 1.] We follow the same rule as to the necessity of defendant's instruction requiring a finding of facts when the defense of sole cause is interposed in humanitarian negligence cases. [See Watts v. Moussette, supra; Doherty v. St. Louis Butter Co., 339 Mo. 996, 98 S. W. (2d) 742; Dilallo v. Lynch, 340 Mo. 82,

101 S. W. (2d) 7; McGrath v. Meyers, 341 Mo. 412, 107 S. W. (2d) 792.]

It is, however, further urged that, in this case, it was harmless error to give a too general instruction. It is argued, citing Murphy v. Duerbeck (Mo.), 19 S. W. (2d) 1040, and Riley v. Independence, 258 Mo. 671, 167 S. W. 1022, that there was no proof of any negligent act upon the part of plaintiff except his failure to look again before stepping on the switch track, so that the jury had nothing else before it to consider. The court's order, granting a new trial, cannot be reversed on this ground. In the first place, the instruction in this case was more general in its terms than the instructions in the cases cited. Moreover, the argument (that the jury could only consider what was in evidence) would also sustain the proposition that it is harmless error for a plaintiff to submit the case without any instructions. This court did so hold at the time the above cited cases were written but it has since reversed that position, by its decision en banc, in Dorman v. East St. Louis Railroad Co., 335 Mo. 1082, 75 S. W. (2d) 854. Furthermore, we cannot say in this case that there was no other possible theory of negligence which might have been considered by the jury. Perhaps they might have felt that plaintiff, an experienced railroader, if he had looked carefully, could have seen the brake chains of the cars hanging loose and should have anticipated their moving by the force of gravity. Plaintiff was also very thoroughly cross-examined as to the propriety of his method of getting the mule and the harrow across the railroad. The following alternative methods were directly, or by inference, suggested: That Steelman could have ridden the mule ahead; that Steelman could have assisted plaintiff with the harrow; that the harrow could have been fitted upon and carried over on the mule's back as well as plaintiff's; and that plaintiff could have ridden the mule holding the harrow. Plaintiff said that the latter method "is not very good policy," with which we are inclined to agree without further explanation. The only description of the mule, found in the record, is that he was an able-bodied farm mule. This does not prove that he was a pack mule; nor is there any evidence of essential differences between Missouri and Arkansas farm mules.

The injection of a mule into any situation usually presents peculiar complications. It is true that Judge LAMM, in a famous opinion, held that under the " 'mule law' in this jurisdiction" a mule is not "per se a nuisance." [Lyman v. Dale, 262 Mo. 353, 171 S. W. 352.] Although he concluded that the nature and history of the animal "cannot so far condemn him that he does not stand *rectus in curia*," nevertheless he frankly admitted that "it has been intimated in fireside precepts that the mule is unexpected in his heel action and has other faults," and that "there are sporadic instances

of mules behaving badly." We note that this case was tried in a great urban community, to-wit: The City of St. Louis. We must take judicial notice that in such populous centers the roar of motors and the whir of dynamos and turbines have replaced the more pastoral sounds of the barnyard. We cannot overlook the fact that modern conditions require those who dwell in large cities to know more about machinery than of this former object of our State pride, the Missouri mule. It may be that the learned trial judge felt that he was more familiar with traits and characteristics of farm mules than his jury, and that under the circumstances this jury ought not to have been given a roving commission in a mule case. In such a case, we should defer to the trial court's judgment as to the prejudicial effect of this instruction. "The power of the trial court to grant a new trial is an exercise of its judicial discretion, which may be based upon matters known to the court (often said to be in the breast of the court) because the trial judge participated in the trial and knew what took place, much of which cannot be preserved in any bill of exceptions or record. [Beer v. Martel, 332 Mo. 53, 55 S. W. (2d) 482; In re Zartman's Adoption, 334 Mo. 237, 65 S. W. (2d) 951.] Until the amendment of Section 1018, Revised Statutes 1929 (Mo. Stat. Ann., sec. 1018, p. 1285), in 1891 (Laws 1891, p. 70), there was no provision for review, by appeal from such action by the trial court." [Castorina v. Herrmann, 340 Mo. 1026, 104 S. W. (2d) 297; Arnold v. Alton Railroad Co., 343 Mo. 1049, 124 S. W. (2d) 1092.]

Concerning Instructions 6 and 7, as to which complaint is made of over emphasizing the burden of proof particularly as to equally balanced evidence and the effect of the jury's inability to determine therefrom the question of what negligence proximately caused plaintiff to be injured, it is only necessary to say that this is a matter usually left to the judicial discretion of the trial court. Defendant had one correct and complete instruction on the burden of proof and another on the credibility of witnesses (3 and 4), justified by sharp conflict of testimony on vital fact issues and impeachment testimony. The question is whether it was proper to give two more burden of proof instructions. "Repetition in or elaboration on the same proposition of law in different instructions is not ordinarily sufficient grounds for reversal and remanding a cause upon appeal," but the situation is somewhat different where the trial court sustains a motion for new trial on the ground that this was prejudicially misleading. [Arnold v. Alton Railroad Co., supra.] So where, as here, two more instructions were given, both emphasizing the proposition that defendant was entitled to a verdict in the event of equally credible testimony on both sides, we do not believe

we would be justified in interfering with the action of the trial court granting a new trial upon the ground stated.

The order is affirmed. *Ferguson* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.