FLORENCE BREECE, APPELLANT, v. E. OLIVER RAGAN, RESPONDENT.— 138 S. W. (2d) 758.

Kansas City Court of Appeals. April 1, 1940.

*Hon. W. S. Stillwell* and *Leslie B. Hutchison* for respondent.

*Claud D. Hall, Wm. H. Allen* and *Charles D. Snodgrass* for appellant.

SPERRY, C.—This is a suit for damage, brought by Florence Breece, plaintiff, v. E. Oliver Ragan, defendant. Jury trial resulted in a verdict and judgment for defendant. Plaintiff appeals. We will refer to the parties as plaintiff and defendant, as they were known below.

The undisputed facts are that plaintiff was the owner of a farm and of a herd of some 59 head of cattle kept thereon. Plaintiff, a lady, taught school and lived in St. Louis county, but came home on occasions for brief visits and inspection of her farm and property. Plaintiff's father, George Breece, lived on the farm but was old, fragile, and did not work except for occasional feeding of the stock, and the doing of odd jobs; but he was generally in charge of the farm during plaintiff's absence. Plaintiff, at the time of the damages complained of, employed one Barnett, as a farm hand, and he did the field work and other general work of the farms. A few days prior to November 4, 1937, plaintiff visited her farm and learned that many cattle were dying, in the locality, of a disease known as "bloody murrain," although plaintiff's herd was not infected. She called defendant, who held himself out to be a skilled veterinary surgeon and doctor of ailing live stock, and told him she wanted him to vaccinate her cattle as a preventive of the above disease. This the defendant agreed to do. Plaintiff further told him that she would order the

serum and that same would be at her farm when he arrived to do the work. On or about November 4, 1937, defendant arrived at the farm and informed George Breece that he was there to vaccinate the cattle. Breece told him that plaintiff had informed him that defendant was coming for that purpose, and that the serum had arrived. Thereupon Breece called Barnett from the field and told him to drive the cattle to the house and put them in the barn; that they were to be vaccinated. Barnett drove the cattle up, some 59 head, including calves, yearlings and grown cattle, and he, Breece, and defendant, drove them into the barn. The barn consisted of two log structures separated by a ten or twelve foot passageway. The whole was surrounded by a shed, through an opening of which, on the south side, the cattle were driven. As they passed around through the shed along the east, north and west sides of the shed, defendant caught and vaccinated several calves, which were driven out. A rope was stretched from one of the log barns, inside the inclosure, across to the other log structure, thus forcing the cattle into the west end of the shed, a space about twelve feet by twenty-seven feet, and the south side of said shed, west of the log structure farthest west, was blocked by a mound of hay. Across the east end, or opening, there was a gate, which Barnett closed and guarded, and through which he would permit vaccinated cattle to escape from time to time. Breece stood between the log structures, on the south side of the rope, and may or may not have been able to see what took place during the actual vaccination of the cattle. Barnett could see the details of the operation.

The shed sloped, from the gate to the west end thereof, about one foot. Defendant entered the shed, among the cattle, and, while they were loose in the inclosure, began to vaccinate them by jabbing a hypodermic needle in their necks or shoulders. The cattle crowded to the lower end of the shed and climbed on top of each other, which fact defendant observed. After a time defendant saw the legs of a prostrate animal protruding from under the packed mass of cattle, and ordered the cattle released. When they were released it was found that six cattle were dead from the effects of having been trampled, crushed and smothered by the mass of the others.

Defendant contended below, and contends here, that he is absolved of liability because Mr. Breece, the agent of plaintiff, was guilty of contributory negligence. Plaintiff contends that defendant's answer failed to raise a proper issue of contributory negligence because it failed to allege facts sufficient to show that Breece actively participated in frightening and stampeding the cattle, which was, under all of the facts in evidence, the proximate cause of the damage.

The evidence is undisputed, and virtually conclusive, to the effect that *all* that Breece did was to assist in the assembling of the cattle in the barn. Defendant alone, by his own testimony, was the *only* person inside the pen where the cattle were being vaccinated. Neither

Breece nor Barnett ever entered the pen. Neither of them did anything whatever to cause the cattle to become frightened or to mill about and climb on top of each other, which was the proximate and effective cause of their being killed. The only negligence, if any it was, that Breece and Barnett were guilty of, was in placing the cattle in the barn. But that was not what caused the damage, according to all of the testimony. "In order for plaintiff's negligence to defeat him such negligence must 'enter into and form the direct producing and efficient cause of the casualty, and absent which the casualty would not have happened.' " [Alyea v. Junge Baking Co., 207 Mo. App. 687, l. c. 690.] As to what actually caused the damage, there is no conflict in the evidence. It was the fact that the cattle were frightened and hurt by the needle and so driven as to cause them to crowd on each other and pile up, or they piled up of their own accord by being herded loosely into a shed and being pursued by defendant. Neither Breece nor Barnett was in the shed where defendant undertook to use his own method of getting the cattle vaccinated. He was in charge of the operation, hired as a skilled surgeon for such purpose, and he could have handled it in any manner he saw fit. At least no one attempted to tell him how to do it. When he saw the effect he was producing on the cattle, as he could have seen, and as he himself said that he did see, he should have adopted a different method, or he should have, temporarily designated. At any rate he was negligent in continuing in the manner he did continue, in face of what he could see was happening under the procedure which he had adopted.

Plaintiff complains of many errors in the wording of Instruction D. The instruction is erroneous in several respects. Among other things it provides: "Defendant's negligence if any, must be the *sole* proximate cause whereas plaintiff's negligence, if any, need not be the approximate cause of the injury, for it defeats a recovery if it but contributed directly in *any* manner, to the injury." (Italics ours.) A similar instruction was condemned by the Supreme Court in Hires v. Letts Melick Grocery Co., 296 S. W. 408, l. c. 410, 411; Cento v. Security Building (Mo.), 99 S. W. (2d) 1, l. c. 7.

The instruction is erroneous in that it declares that "defendant's negligence, if any, must be the *sole* proximate cause." Such language was condemed in King v. Rieth (Mo.), 108 S. W. (2d) 1, l. c. 5. The instruction is also bad for other reasons; but we think that, in the event of a new trial, such error will not again appear, in view of the fact that new instructions will be drawn after study of the cases. We call attention to the language used in Pearrow v. Thompson (Mo.), 121 S. W. (2d) 811, l. c. 815.

Plaintiff's criticisms of defendant's Instruction (e) have, in large measure, been ruled in passing on defendant's Instruction (d), above.

We see no good reason to reiterate and elaborate on what we have said in that connection.

Defendant's Instruction (f) is erroneous for the reason stated in Pearrow v. Thompson, *supra*, 1. c. 815. The instruction there condemned is strikingly similar to the one here discussed.

Because of errors in instructions given for defendant, as above discussed, the judgment is reversed and the cause is remanded. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of Sperry, C., is adopted as the opinion of the court. The judgment is reversed and the cause is remanded. All concur.