229 S.W.2d 681 (1950)
STUPP
v.
FRED J. SWAINE MFG. CO.
No. 41421.
Supreme Court of Missouri, Division No. 1.
May 8, 1950.
*682 Mortimer A. Rosecan, Drew W. Luten, Jr., St. Louis, for appellant.
Jerome A. Gross, Roscoe Anderson, Cullen Coil, St. Louis, for respondent.
CONKLING, Justice.
After having judgment upon the jury's verdict for $20,000 for personal injuries, plaintiff appealed from the circuit court's order granting defendant a new trial. The trial court sustained the defendant's new trial motion upon the sole ground that the court erred in giving plaintiff's instruction 9.
Plaintiff lived in Chicago and was there employed by Universal Metal Products Company as a punch press operator. In April, 1946, plaintiff's employer purchased through a dealer and had received from the manufacturer thereof, the defendant-respondent, whose plant is in St. Louis, a new Swaine No. 39 geared, electric power driven, punch press, of about 65 tons. The press was installed in the Chicago plant of plaintiff's employer. On March 11, 1947, while plaintiff was there operating that punch press for his employer the press "repeated" when plaintiff's right hand was between the "dies" of the press, thereby causing the loss of all the fingers of that hand. The press was designed to make but a single downward stroke, move upward and then remain stationary until again started in downward motion by the operator.
The press functioned with two dies, the lower one at rest in the bed of the machine and the upper die, or "slide", descending and ascending. The metal to be punched out was placed over the lower die. The machine was then started by the operator and the upper die descended pressing out the metal between the dies. When this press was received from defendant it was equipped with and constructed to operate with a foot pedal. Shortly after the press was installed, and in April, 1946 plaintiff's foreman, Elmer Anderson, as a safety measure, disconnected the foot pedal and installed a "bi-manal" hand-operated control upon it. This was "a Surty bi-manal safety device." The press thereafter was not operated by the foot pedal. That "Surty safety device" was installed "so a man (the operator) couldn't have his hands *683 in the press (between the dies) when the press was operated (when the upper die descended)". The new bi-manal control, the operation of which started the descending motion of the upper die, forced the operator to reach out and away to his sides and upward with both hands and to manually press down the hand levers. The hand levers moved down a distance of five inches. That required the operator's two hands to be up and away from the danger zone between the two dies. The operator was required to press down simultaneously with each hand before that part of the machine holding the upper die would start the downward stroke. After the upper die went upward into position and stopped, the operator removed the pressed metal with his hand. After another piece of metal was placed over the lower die, the operator then had to again reach out and away and upward to manually press down simultaneously with each hand to again operate the machine in its single downward stroke of only three inches. In normal operating position the operator's eyes were even with the upper die when that upper die returned to its upper position and came to a standstill.
Plaintiff operated this press for ten months before his accident. He made approximately 4,000 stampings a day. On the occasion of plaintiff's injury on March 11, 1947, he was engaged in stamping out metal covers for Kleenex holders. Each was about 12 inches long. He pressed down simultaneously with each hand to start the machine. The upper die descended and stamped out the metal and then the upper die ascended. Plaintiff reached in with his right hand to remove the pressed out metal when the upper die descended on the "repeat" stroke without the machine having been again started by plaintiff. Plaintiff did nothing to cause the upper die to "repeat" or make the second stroke. It had never done that before. His fingers were mashed. Plaintiff testified he "didn't expect it (the upper die) to stay in motion", and "did not look to see that it (the upper die) had stopped." "Q. But if you had looked you could see it was coming down, couldn't you? A. Yes, sir." Defendant contends that testimony shows plaintiff was guilty of contributory negligence as a matter of law.
After the accident, Mr. Anderson, the foreman, inspected the press and found that inside the housing the clutch trip and the three clutch bolts were "chewed up" and badly worn. The worn bolts could not make proper contact with the trip. The bolts "overrode" the clutch trip, engaged the drive shaft and thus caused the press to "repeat". The bolts and trip were replaced with new parts ordered by telephone from defendant in St. Louis. In about three weeks the new bolts and trip became worn and chewed up, and the press again repeated. The press was again taken out of operation. Further examination disclosed that the clutch trip housing had been placed at an improper angle and was out of alignment. That caused improper contact between the bolts and the clutch trip. Too great pressure was exerted on the bolts and trip causing them to become worn, causing the bolts to override the trip, and the punch to repeat. That condition was later fully remedied by foreman Anderson by complete correction of the original misalignment which the machine had when originally received from defendant's factory in St. Louis. William Swaine, Vice-President of defendant company, who examined the punch press in Chicago after plaintiff's accident and had pictures made of it, testified, in part: "Q. And if your clutch trip is chewed up and your clutch bolts are chewed up, can that cause the machine to repeat? A. It can, definitely. Q. And if the clutch trip is not placed in your machine at the proper angle so that when these bolts engage it there is an undue pressure, can that cause the chewing up? A. Yes, it can."
The negligence alleged is that the punch press defendant sold and delivered to plaintiff's employer was unsafe and dangerous "in that its parts were not properly * * aligned, thus * * * causing said machine * * * to be likely to repeat * * * and to injure anyone who might be using said machine", etc. Upon the oral argument of the case here defendant conceded that plaintiff made a prima facie *684 case for the jury and that under the applicable law a jury case was made if the clutch trip housing was out of alignment. That misalignment was established by plaintiff's evidence. The answer pleaded contributory negligence.
Plaintiff's instruction 1 submitted his theory of his case to the jury, purported to cover the entire case and predicate a verdict for plaintiff. Instruction 1 failed, however, to require a finding that at the time of the injury plaintiff was exercising ordinary care for his own safety. Instruction 3, given for defendant, submitted contributory negligence of plaintiff in general terms only, See Pearrow v. Thompson, 343 Mo. 490, 121 S.W.2d 811 and authorized a verdict for defendant if plaintiff failed to use "ordinary care for his own safety" and which, "caused or contributed to cause his injury." Instruction 8 predicated a verdict for defendant if the jury found that the sole cause of plaintiff's injuries, was that (prior to plaintiff's injury) plaintiff's employer detached from the punch press its original foot operating device, and that in so doing held down the trip of the press from its original position, and that plaintiff's injuries "were not caused by any negligence on the part of defendant." The theory of that instruction finds support in defendant's evidence.
The court granted defendant a new trial for the giving of instruction 9, which was in these words: "Wherever the issue of sole cause is submitted in the instructions and deals with the conduct of Elmer Anderson or the plaintiff's employer, you are instructed therewith that if you find from the credible evidence that the defendant, the Fred J. Swaine Manufacturing Company, was negligent under and within the meaning of Instruction No. 1 and further find from the credible evidence that such negligence of said defendant directly caused the casualty, or so find that such negligence of defendant directly joined and concurred with and (the) conduct of Elmer Anderson or plaintiff's employer, whether negligent or not, in directly causing the casualty, then, under such finding by you, there would be no issue of such sole cause in the case because the defendant could not make use of such conduct of Elmer Anderson or plaintiff's employer to shield itself against the result of its own negligence, if you so find it was so negligent, and you would be required to return a verdict for the plaintiff in this case."
We do not find in this record that the trial court indicated the specific reason upon which it concluded it had erred in giving instruction 9. But the brief of each party seems to concede that one reason the trial court so concluded was that neither instruction 9, nor instruction 1, required the jury to find that plaintiff was in the exercise of ordinary care at the time of his injury, all as set out in paragraph (4) (A) of the motion for new trial. We do not agree with the argument of either plaintiff or defendant upon that matter. And we find it unnecessary to consider or rule those contentions in determining whether the trial court correctly ruled the new trial motion.
For more obvious reasons than those suggested in either brief, it is apparent that the trial court correctly granted a new trial for the giving of instruction 9, on the grounds stated in (4) (B) of the new trial motion. Instruction 8 was the only one in which sole cause was ever mentioned.
Instruction 9, drawn and requested by plaintiff to counter instruction 8, is clearly erroneous. It is an improper comment on the evidence, argumentative in character, unsupported by proof, misleading and singles out for improper mention and emphasis a fancied conclusion of the writer of the instruction that defendant was attempting "to shield itself against the result of its own negligence." It was an improper but effectual withdrawal of instruction 8, and those two instructions are contradictory of each other. Instruction 9 is highly argumentative. Many matters proper to be made in an oral argument of counsel to the jury are highly improper and reversibly erroneous when embodied in a written instruction from the court to the jury. In this instruction the court told the jury, in effect, that the court believed defendant needed to shield itself and was *685 attempting improperly to shield itself. The fact that the court gave instruction 8 at defendant's request did not warrant telling the jury, in instruction 9, that "defendant could not make use of such conduct of Elmer Anderson or plaintiff's employer to shield itself against the result of its own negligence." That language in an instruction was highly prejudicial to defendant, was calculated to (and doubtless did) inflame the jury against defendant's case. We find nothing in this record to support the unfair imputations of the language used in instruction 9. From no facts of record, and from nothing which occurred at the trial, are those improper imputations fairly inferable. We think the language used and the context in which the words appear were sufficient to foreclose impartial consideration by the jury of the merits of defendant's cause. Hely v. Hinerman, 303 Mo. 147, 260 S.W. 471, Burtch v. Wabash R. Co., Mo.Sup., 236 S.W. 338, 346, Pedigo v. Roseberry, 340 Mo. 724, 102 S.W.2d 600, Prince v. Kansas City Southern R. Co., Mo.Sup., 214 S.W.2d 707, Wiener v. Mutual Life Ins. Co. of New York, 352 Mo. 673, 179 S.W.2d 39, Webb v. Baldwin, 165 Mo.App. 240, 147 S.W. 849, Weishaar v. Kansas City Public Service Co., Mo.App., 128 S.W.2d 332. Authorities could be multiplied. By granting a new trial, the trial court very properly corrected its own error in the giving of such an instruction. Its action in so doing must be approved.
Defendant further contends that the new trial motion was correctly ruled because instruction 1 "assumes as a fact that the trip clutch of the punch press was improperly aligned and located". Instruction 1 does not assume that the trip clutch was improperly aligned and located. It is therein required that the jury find those things from the evidence. But, in view of the retrial, we call attention to the fact that there is no allegation in the petition that the trip clutch was improperly located, and in that respect the submission of instruction 1 is broader than the pleadings. No citation of authority is needed that instructions must be within the scope of the pleadings and the evidence. For this additional reason the new trial motion was properly ruled by the trial court. This matter may easily be corrected upon retrial.
Defendant also contends that instruction 4, given at plaintiff's request, assumes that "the accident happened in accordance with plaintiff's testimony." For the reason that instruction 4 specifically mentions two instructions by number (numbers 1 and 3) this contention must be denied. Instruction 1 submitted plaintiff's theory of the case and instruction 3 submitted generally the defense of contributory negligence. Instruction 4 is not well worded and drawn and, upon retrial, can be much improved. However, as limited to instructions 1 and 3, it is not subject to the criticism made of it by defendant.
It is also contended that plaintiff's instruction 12, upon the measure of damages was erroneous for authorizing recovery, "for such loss of earnings, if any, not to exceed $200.00 per month, as you may find from the evidence plaintiff has suffered, or is reasonably certain to suffer in the future," etc. Plaintiff was unable to work for four months. His loss of earnings during that time exceeded $200 per month. He thereafter entered a new employment, and fortunately at an increased pay rate. Plaintiff does have a physical handicap from a serious injury. There is some evidence that he cannot work as fast or efficiently as certain of his fellow employees who have had no such injury. The jury could infer that fact. Those matters are for the jury's consideration. But a careful search of the record reveals no proof that plaintiff will suffer any loss of future earnings at the rate of $200 per month. The better and safer practice is to omit such stated authorizations in terms of dollars per month from measure of damage instructions. It was error to give instruction 12 in the form given.
Conceding that plaintiff's evidence made a prima facie case for the jury, defendant finally contends that plaintiff's own testimony convicts him of negligence as a matter of law, and that, therefore, plaintiff can *686 have no recovery in this action. With this contention of defendant we do not agree.
Defendant's contention is based upon the argument that the movement of the upper die was open to plaintiff's view; that there was nothing to distract plaintiff's attention away from his work; that plaintiff knew that if the levers of the bi-manal control were held down a fraction of a second too long, the upper die would "repeat" its descent in a second stroke; and that plaintiff, at that particular instant, did not look to see if the upper die had stopped at its top position.
But we are pointed to no evidence, and our reading of the record reveals none, that plaintiff held the bi-manal levers depressed downward for too long a period, or for even a fraction of a second too long. The contrary is fairly to be inferred from plaintiff's testimony. And the testimony of Mr. Anderson is that, as equipped with the bi-manal safety device, the press would not have repeated at all except for the improper alignment of the clutch trip housing. For that improper alignment the defendant alone was responsible under the record evidence.
Plaintiff had operated this press each working day for ten months. It had not before repeated. It is important, too, that the length of the stroke of this press was only three inches. While a punch press can be a dangerous machine and the space between the dies a zone of danger, under these circumstances plaintiff was entitled to have some reliance upon the proper functioning of the machine after ten months of "single-stroking" only. The fact that his eyes were but instantaneously averted, and only at the moment of this accident, can do no more than make the question of plaintiff's contributory negligence one for the jury. Contributory negligence can be but a question for the jury, where, as here, the evidence on material points is conflicting. Upon this issue the inferences to be drawn from the proof in this record are not certain, but are fairly debatable, and under these circumstances, we cannot take that question of the contributory negligence of plaintiff from the jury. We have held that a workman is guilty of contributory negligence as a matter of law only when the danger of doing the work is so obvious and glaring that no reasonable person in the exercise of ordinary care would undertake to do it. It cannot be concluded as a matter of law, from the record before us, that one in the exercise of ordinary care would not have continued to operate the press because to do so was obviously and glaringly dangerous. As to such situations as are here presented, this court has stated that: "As a general rule a man is not required to look for danger when he has no cause to anticipate danger, or when danger does not exist except it be caused by the negligence of another." Such was the case here. The danger in this machine existed because of defendant's negligence. Defendant's contention is without merit. Bartlett v. Taylor, 351 Mo. 1060, 174 S.W. 2d 844, Rouchene v. Gamble Construction Co., 338 Mo. 123, 89 S.W.2d 58, Cento v. Security Bldg. Co., Mo.Sup., 99 S.W.2d 1.
The judgment of the circuit court in granting the new trial must be affirmed. It is so ordered.
All concur.