**Martin HEMAN, Plaintiff-Appellant,**

v.

**Wayne Daryl PERRY, Defendant-Respondent.**

No. 50903.

Supreme Court of Missouri,

Division No. 1.

March 8, 1965.

Motion for Rehearing or to Transfer to Court En Banc Denied April 12, 1965.

1

**2**

Taylor & Taylor, Independence, and Walter A. Raymond, Raymond, West & Cochrane, Kansas City, for appellant.

William A. Rundle, Jr., George M. Wells, Morrison, Hecker, Cozad & Morrison, Kansas City, for respondent.

WELBORN, Commissioner.

This is an action for damages totaling $36,500 for personal injury and property damage, arising out of an automobile collision. The jury returned a unanimous verdict for the defendant. After his motion for new trial had been overruled, plaintiff appealed to this court. We have jurisdiction by reason of the amount sued for.

The collision out of which this litigation arose occurred at around 3:00 P.M. on November 4, 1961, a clear day with the roadways involved dry. The defendant, Wayne Daryl Perry, was driving his 1960 Ford sedan north on Supplemental State Route H in Jackson County. The plaintiff, Martin Heman, had driven his 1957 Pontiac sedan west on Stoner Road to its intersection with Route H. According to plaintiff, he, in response to a stop sign located some 36 feet east of the east edge of the 18′ concrete pavement on Route H, and controlling westbound traffic on Stoner, stopped his car some 4 to 5 feet east of the Route H pavement. Plaintiff testified that he looked to the south after he stopped and saw no vehicle approaching from that direction on Route H within the 400′ range of his vision. Beyond that distance, Route H sloped downward, obscuring the vision of a driver in plaintiff's position at the intersection. Plaintiff stated that, after stopping and looking to the south and seeing no traffic in that direction, he started his vehicle slowly, turned to his right, intending to proceed northward on Route H, and had proceeded some 30 feet north on that route when his vehicle was, without prior warning, struck by defendant's Ford.

The defendant testified that he was driving north on Route H at 65 to 70 miles per hour (on his deposition he placed his speed at 65 to 75 miles per hour) when he topped the rise some 350 to 400 feet below Stoner Road. At that time he saw plaintiff's Pontiac moving slowly west on Stoner Road, past the stop sign and about 20 feet from the east edge of the concrete pavement on Route H. Defendant stated that immediate-

ly upon seeing plaintiff he felt that plaintiff was not going to stop so he sounded his horn and applied his brakes. His Ford skidded some 300 feet in a straight line to the point of collision in the northbound lane of Route H. According to defendant, plaintiff did stop his car with the front of it about 5 feet over the east edge of the H pavement, and, when defendant was about halfway to the intersection, he attempted to turn his auto to the left, but plaintiff started, as if to cross H and continue on Stoner Road, blocking both lanes of H, and defendant was unable to avoid the collision. A passenger in defendant's car testified to substantially the same version of the collision. There was no other testimony of eyewitnesses.

Photographic evidence showed damage to plaintiff's Pontiac on the left rear and to defendant's Ford on the right front. Such evidence also showed skid marks, identified as having been made by defendant's vehicle, terminating at a point where dirt and other debris appeared on the roadway. This point was at approximately the north edge of the Stoner Road blacktop roadway as it flared out to intersect Route H.

The case was submitted to the jury on defendant's excessive speed as negligence. The defendant submitted plaintiff's failure to yield the right-of-way as contributory negligence. The assignments of error here relate to defendant's counsel's argument to the jury on contributory negligence and the instruction by which such defense was submitted to the jury.

In the closing argument of defendant's counsel the following occurred:

"MR. RUNDLE: * * * This business of 90 miles an hour, or more. From what would you draw the conclusion of 90 miles an hour, or 80 miles an hour? You have to follow the testimony in the lawsuit, and the only evidence is that he was going from 65 to 75 miles an hour. That is not the point. The point is at what speed could that car have been stopped under these circum-

stances? I say to you that it is right there that plaintiff has not sustained the burden of proof in this lawsuit.

"Let's assume that you can find some basis for saying that Wayne could have stopped his car and that he was negligent in not stopping. There is one more hurdle for them, and that is this matter about contributory negligence which they have to overcome.

"MR. RAYMOND: I object to that as a misstatement. The burden is on them. He says we have got to overcome it.

"THE COURT: Overruled."

On this appeal plaintiff contends that the trial court erred in overruling his objection to the argument, stating that the court thereby in effect placed its approval upon an argument that plaintiff had the burden of proving his own freedom from contributory negligence.

■ Defendant acknowledges that the burden of proof on the issue of plaintiff's contributory negligence was upon the defendant and the jury was so instructed. The argument objected to did not expressly refer to the matter of burden of proof of contributory negligence. The jury was told that the plaintiff had to "overcome" the matter of contributory negligence. In a sense that is true in any case where contributory negligence is pleaded. The plaintiff's conduct is in issue and must be measured against the applicable standard of care. Failing to measure up to that standard in a respect having causal relationship to the injury for which he seeks redress, the plaintiff cannot recover. In our opinion the remarks of defendant's counsel in this case, while not to be encouraged, should not be extended beyond their content to make them the equivalent of stating that the burden of proof was upon plaintiff to prove that he was free from contributory negligence. We, therefore, reject appellant's contention that the court's overruling of his objection constituted an oral instruction that the

**4**

burden was upon plaintiff to prove his freedom from contributory negligence.

■ In his closing argument plaintiff's counsel pointed out to the jury the court's instruction on the issue of contributory negligence and read the instruction in its entirety to the jury. We fail to perceive how the statements of defendant's counsel in his oral argument could have confused or misled the jury as to the effect and meaning of the positive and direct language of the court's instruction on burden of proof. In our opinion the argument of defendant's counsel was not prejudicially erroneous. Marquardt v. Kansas City Southern Ry. Co., Mo.Sup., 358 S.W.2d 49, 57(13).

Plaintiff cites cases involving positive misdirection by the court on matters of law, such as Lefkowitz v. Kansas City Public Service Co., Mo.Sup., 242 S.W.2d 530, and Schaefer v. Kansas City, Mo.App., 270 S.W. 2d 84. That is not the situation of this case. Nor is this a case of conflicting instructions by the court, such as were involved in Jennings v. Cooper, Mo.App., 230 S.W. 325, cited by plaintiff. None of the other numerous cases relied upon by plaintiff involved a situation in any respect comparable to that here presented.

■ Plaintiff also alleges error in another portion of defendant's counsel's argument in which, plaintiff contends, counsel erroneously stated the measure of contributory negligence which would defeat plaintiff's claim. However, no objection was made to this argument at the trial and, therefore, plaintiff may not now assert that error arose from it. Stanziale v. Musick, Mo.Sup., 370 S.W.2d 261, 269(13, 14); Fisher v. Williams, Mo.Sup., 327 S.W.2d 256, 261(4–6).

Defendant submitted plaintiff's contributory negligence by the following instruction:

"The Court instructs the jury that if you find and believe from the evidence that at the time and place mentioned in evidence the defendant was driving an automobile in a northerly direction on Missouri County Road 'H', and that plaintiff was driving an automobile on Stoner Road in a westerly direction, and that Stoner Road intersected Missouri County Road 'H', and if you find that there was a stop sign erected at said intersection warning drivers approaching said Missouri County Road 'H' from the east on Stoner Road to come to a stop before proceeding on to said Missouri County Road 'H', and if you find plaintiff Martin Heman failed to keep and maintain a careful and vigilant lookout ahead and laterally for other vehicles upon said Missouri County Road 'H', including the vehicle which defendant Wayne Daryl Perry was driving, and if you further find Missouri County Road 'H' was a through highway, and that the said plaintiff Martin Heman failed to stop 'said automobile but drove the same out on to the traveled portion of said Missouri County Road "H" without stopping at a time when the automobile which defendant Wayne Daryl Perry was driving was approaching so closely on Missouri County Road "H" as to constitute an immediate hazard, if you find it was, and if you further find that the said plaintiff Martin Heman failed to yield the right-of-way to the automobile driven by defendant Wayne Daryl Perry, and if you find that such failure, if any, on the part of plaintiff Martin Heman was negligence, as defined in these instructions, and that such negligence, if any, directly contributed to cause the collision and his injuries, if any, then your verdict must be in favor of defendant Wayne Daryl Perry and against the plaintiff.' "

Appellant attacks this instruction on the following grounds:

"(1) It has the erroneous and unlawful effect of telling the jury plaintiff was negligent as a matter of law just because a collision occurred.

"(2) It erroneously failed to require a finding that plaintiff knew, or should have known, defendant's automobile was ap-

proaching so close under the circumstances as to constitute an immediate hazard but assumed such facts.

"(3) It erroneously charged plaintiff with the duty of taking protective measures upon the mere appearance of defendant's automobile.

"(4) It erroneously deprived plaintiff of the benefit of the fact he was first in the intersection and had the right to assume defendant would approach at lawful speed and exercise the highest degree of care until he had notice to the contrary.

"(5) It charged plaintiff with the absolute duty of keeping a lookout, seeing everything and realizing there was danger of collision."

■ Appellant's objections to the instruction as authorizing a finding of negligence as a matter of law just because the collision occurred and as putting upon the plaintiff the absolute duty to see the defendant's automobile, realize the danger and avoid the collision are based upon the extraction of portions of the instruction from its context. For example, as making the actual occurrence of the collision the test of whether plaintiff was negligent, plaintiff points to the following language: " * * *, and that the said plaintiff Martin Heman failed to stop said automobile but drove the same out on to the traveled portion of said Missouri County Road 'H' without stopping at a time when the automobile which defendant Wayne Daryl Perry was driving was approaching so closely on Missouri County Road 'H' as to constitute an immediate hazard, if you find it was, * * *." However, the instruction must be read as a whole. Garrison v. Ryno, Mo.Sup., 328 S.W.2d 557, 566. Read as a whole, it is clear that, whether the matters submitted of failure to keep a proper lookout, failure to stop and failure to yield the right-of-way, be considered as independent specifications of negligence (Garrison v. Ryno, supra) or as evidentiary facts in support of ultimate negligence sub-

mitted of failure to yield the right-of-way (Schaetty v. Kimberlin, Mo.Sup., 374 S.W. 2d 70, 72–73), a verdict in favor of the defendant predicated upon a finding of these matters is authorized by the instruction only upon the further and ultimate finding that the conduct of the plaintiff in its totality constituted negligence.

■ Plaintiff in support of his charge that the instruction placed an absolute duty upon him to keep a lookout and discover the danger of defendant's approaching vehicle relies on Welcome v. Braun, Mo.Sup., 319 S.W.2d 586 and Lay v. McGrane, Mo. Sup., 331 S.W.2d 592. The instructions found erroneous for such reason in those cases are not similar to that here involved. In those cases the difficulty with the instructions lay in the requirement that a driver do what he *could* do at a time when he *could* have seen the other vehicle and *could* have realized that there was danger of collision. Such language was held to have imposed an absolute duty rather than a duty to use the highest degree of care to do the hypothesized acts. The instruction here involved imposed no absolute duty but measured the plaintiff's duty in terms of negligence, or failure to exercise the highest degree of care.

Likewise the instruction is wholly different from that involved in Slaughter v. Myers, Mo.Sup., 335 S.W.2d 50, relied upon by plaintiff. The instruction in that case specifically declared the failure to yield the right-of-way in the circumstances negligence as a matter of law. This instruction does not define any of the acts specified therein as negligence as a matter of law.

As to the failure of the instruction to require a finding that, at the time plaintiff entered Route H, he knew or in the exercise of the highest degree of care should have known that defendant's vehicle was approaching so closely as to constitute a hazard, no case has been cited by the appellant in which it has been held that such a finding is essential to an instruction such as that here involved. Plaintiff points to lan-

guage in Herr v. Ruprecht, Mo.Sup., 331 S.W.2d 642, 647, an intersection collision case, in which the court stated: "However, the fact that a collision occurred and the manner of its happening are evidentiary facts which must be taken into consideration in determining the sufficiency of the evidence, especially in this type of case where the essential question is whether the plaintiff's vehicle was 'approaching so closely on the through highway as to constitute an immediate hazard' and whether the defendant knew or should have known of such danger." The question actually under consideration by the court in Herr was whether or not the plaintiff had made a submissible case of negligence of defendant's failing to yield the right-of-way. The court did not use the language relied upon in passing upon the sufficiency of an instruction. A concurring opinion in Herr did suggest that whether scienter should be hypothesized be considered in redrafting of the right-of-way instruction. 331 S.W.2d 653. However, the question was not expressly decided.

In Snider v. King, Mo.App., 344 S.W.2d 265, the Springfield Court of Appeals held a right-of-way instruction bad because it failed to hypothesize sufficiently the facts from which the jury might have found that the driver on the intersecting highway by the exercise of the highest degree of care could have seen plaintiff's vehicle on the through highway approaching the intersection so closely as to constitute an immediate hazard. The court pointed out that the evidence on that question was divergent and that the instruction on failing to hypothesize facts in such regard failed to hypothesize facts essential in law to support the verdict. 344 S.W.2d 280(14).

In neither Herr nor Snider was failure to yield the right-of-way coupled with a proper lookout instruction as was the case with the instruction here involved and also in Garrison v. Ryno, supra. It has been held that a proper lookout instruction is "equivalent to a requirement that the jury find that the * * * driver (charged with the obligation) could have seen the other vehicle if he had looked." Harris v. Mound City Yellow Cab Co., Mo.App., 367 S.W.2d 43, 50. Here the appellant does not contend that the evidence did not support the lookout or any other portion of Instruction 8. Therefore, the coupling of the lookout charge with the charge of failure to yield necessarily required a finding that for both such failures appellant could have seen respondent if he had looked.

■ In this case the defendant's contributory negligence instruction was obviously based upon the defendant's version of the collision. He, of course, had the right to submit his version of the occurrence. Watt v. St. Louis Public Service Co., Mo.Sup., 354 S.W.2d 889, 893(8–9). The defendant's evidence would have supported a finding by the jury that the defendant's automobile on Route H was in sight of plaintiff when the defendant was some 400 feet from the intersection and before the plaintiff had reached the actual point of intersection of Route H and Stoner Road. It would have supported a further finding that when the defendant was some 200 feet from the intersection the plaintiff drove his automobile through the intersection directly into the path of the defendant's oncoming vehicle at a time when the defendant's vehicle would have been clearly visible to the plaintiff had he looked to the left.

The essence of the plaintiff's negligence in the circumstances of this case as shown by the defendant's evidence would have been his entry at such time as a person in the exercise of the highest degree of care should have realized that a collision was likely to occur. If the jury had been called upon to find that the plaintiff did know or had reason to know that the defendant's automobile was approaching so closely as to constitute an immediate hazard, there would have been no occasion for further requirement if the jury find that such conduct was negligence or it would have obviously done so.

Therefore, we conclude that in the application of this instruction the jury must, if it found plaintiff guilty of contributory negligence, necessarily have found that the plaintiff either did or should have known at the time he entered the through highway that the defendant's auto was approaching so closely as to constitute a hazard. Such finding being implicit in the matter being submitted, there was no necessity for its "specific hypothesization." Witt v. Peterson, Mo., 310 S.W.2d 857, 861.

Cases cited by plaintiff (Greenwood v. Bridgeways, Inc., Mo.App., 243 S.W.2d 111; Rayburn v. Fricke, Mo.App., 243 S.W.2d 768; Nydegger v. Mason, Mo.Sup., 315 S.W.2d 816) in which instructions in intersection collisions have been held defective for imposing upon a driver a duty to take protective measures upon the mere appearance of another vehicle are not applicable here. In this case, the law (Sec. 304.021 (4), RSMo 1959, V.A.M.S.) imposed upon plaintiff a duty to stop and to yield the right-of-way to vehicles approaching on the through highway so closely as to constitute a hazard. The instruction properly stated plaintiff's duty in terms of the statutory standard.

As for the contention that the instruction deprived plaintiff of the benefit of the fact that he was first in the intersection and that he had the right to assume the defendant would approach at a lawful speed and exercise the highest degree of care until he had notice to the contrary, the instruction was a proper statement of the law based upon defendant's evidence. Had the plaintiff wished the jury to be instructed further in regard to the matters suggested, he should have offered an instruction to this effect. Gladden v. Missouri Public Service Co., Mo.Sup., 277 S.W.2d 510, 520 (14–19).

Finding no error in the matters complained of, the judgment is affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM: The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.