Twila CORBIN, Respondent,

v.

Marvin WENNERBERG, Appellant.

No. 25309.

Kansas City Court of Appeals,
Missouri.

Oct. 5, 1970.

George T. O'Laughlin, William E. Simmons, Miller & O'Laughlin, Kansas City, for appellant.

H. George Lafferty, Jr., Kansas City, for respondent.

SHANGLER, Presiding Judge.

Plaintiff Twila Corbin had damages against defendant Marvin Wennerberg in the sum of $6500 for bodily injuries caused by an automobile collision at an uncontrolled intersection. Judgment was entered upon that verdict and defendant appeals.

At the trial, each party charged the other with the single negligent act of having failed to keep a careful lookout—plaintiff, in her verdict-directing Instruction No. 5, and defendant, in his Instruction No. 7 which submitted the affirmative defense of plaintiff's contributory negligence. Plaintiff's Instruction No. 5 was a replica of MAI 17.01, as modified by MAI 17.05 ("Verdict Directing—Failure to Keep a Lookout"), except that it failed to negate the affirmative defense of contributory negligence as required by the text of MAI. Appellant contends a conflict between the two instructions resulted and reversible error was committed.

At plaintiff's instance, the court also gave Instruction No. 4 which defines "right of way" and is intended for use where the collision occurred at an uncontrolled, intersecting highway. (MAI 14.02 and Notes on Use following). Appellant contends this also was error because failure to keep a careful lookout, not failure to yield the right of way, was the issue—and only issue—submitted to the jury by either party. Instruction No. 4 defining "right of way", therefore, introduced into the case the extraneous, false and distracting element of failure to yield the right of way and, in effect, gave the jury "the equivalent of a roving commission to base a verdict on such Instruction rather than a verdict directing Instruction".

■ We agree that the submission of Instruction No. 4 resulted in prejudicial error requiring a remand. Since it is likely that the same evidence will be presented upon the retrial which may ensue, however, we believe it expedient to consider also defendant's additional claim that it was error to have given Instruction No. 5 without the negating clause, as it involves a question that is apt to recur: whether the evidence justified the submission of plaintiff's contributory negligence for failure to keep a careful lookout.

■ As to plaintiff's first assignment of error, it is to be acknowledged—and plaintiff does not doubt—that where the defense of contributory negligence has been pleaded and is supported by some substantial proof, and "where the court gives a defendant's instruction submitting his affirmative defense of contributory negligence, it is error to give a verdict-directing instruction for plaintiff which fails to refer to or negative his contributory negligence." Moore v. Ready Mixed Concrete Company, Mo., 329 S.W.2d 14, 24 [6]; Norris v. Winkler, Mo.App., 402 S.W.2d 24, 31 [6]; Myers v. Buchanan, Mo., 333 S.W.2d 18, 24. The Missouri approved Jury Instructions has formally recognized this rule of law and requires its systematic application. See: Ernst v. Schwartz, Mo., 445 S.W.2d 377, 378. At page LII (second edition) and page XXXIV (first edition), "Negating Affirmative Defenses", MAI dictates, and practitioners are informed, " * * * the verdict directing instruction should be modified to negate the affirmative defense in issue". And where a verdict directing instruction submits a single negligent act, such as failure to keep a careful lookout, the Notes on Use to MAI 17.01 requires the use of the caudal clause "unless you believe plaintiff is not entitled to recover, etc." to negate the affirmative defense in issue. Plaintiff's omission of that clause from her Instruction No. 5 was an unauthorized deviation from MAI and therefore presumptively prejudicially erroneous unless she can clearly demonstrate that no

prejudice could have resulted from such deviation. Brown v. St. Louis Public Service Company, Mo., 421 S.W.2d 255, 259 [3]; V.A.M.R. 70.01(c).

Plaintiff contends, however, that since the evidence did not justify the submission of her contributory negligence in the first place, it was not necessary for her verdict directing instruction to negate that issue and her failure to do so could not have resulted in prejudicial error. In the determination of that question, we view the evidence in the light most favorable to defendant, on whose behalf the instruction was given. La Fata v. Busalaki, Mo., 291 S.W.2d 151, 152 [1].

Before reviewing the evidence, it is well to state that a negligent failure to keep a careful lookout is not to be submitted unless there is substantial evidence from which the jury could reasonably find that the party charged, in the exercise of the highest degree of care, could have seen the object in question in time thereafter to have taken effective precautionary action; Zalle v. Underwood, Mo., 372 S.W.2d 98, 102 [1, 3]; Hansmann v. Rupkey, Mo.App., 428 S.W.2d 952, 954 [3]; or, having seen the object, could have seen it sooner than she did. O'Neill v. Claypool, Mo., 341 S.W. 2d 129, 135 [11, 12]; Levin v. Caldwell, Mo., 285 S.W.2d 655, 659 [3]; Hawkeye-Security Ins. Co. v. Thomas Grain Fumigant Company, Mo.App., 407 S.W.2d 622, 625 [2, 3]. And where failure to keep a careful lookout forms the basis of a contributory negligence defense, "additional evidence (is) necessary from which the jury could find that plaintiff's failure to keep a careful lookout as a proximate, contributing cause of the collision". Heberer v. Duncan, Mo., 449 S.W.2d 561, 563 [4]; Creech v. Riss & Company, Mo., 285 S.W. 2d 554, 562 [7, 8]. That is to say, that "the party charged with contributory negligence 'had the means and ability to have so acted that a collision would have been avoided'". Zalle v. Underwood, 372 S.W. 2d l. c. 102; Boehm v. St. Louis Public Service Company, Mo., 368 S.W.2d 361, 367

[4]; Miller v. St. Louis Public Service Company, Mo., 389 S.W.2d 769, 772 [3, 4].

We need not review the evidence in its abundant detail because even when considered in the light most favorable to defendant's contributory negligence submission, it leads to the inexorable conclusion that plaintiff could not have seen defendant sooner than she did; thus a jury could not have reasonably found that she failed to keep a careful lookout. This we derive from the testimony of the parties, the only witnesses to the occurrence, and that of investigating Officer Charles Poole, as well as from the physical characteristics of the locality as described by them and disclosed in the photographic exhibits. The merest fraction of the total evidence bears on plaintiff's ability to have seen defendant at the first possible moment, that is, whether she breached her duty to look. See: Graham v. Conner, Mo.App., 412 S.W.2d 193, 201–202 [5–7]. The bulk of it relates to the conduct of the parties and the movement of their vehicles during that time each was in plain view of the other and after plaintiff had actually first seen defendant's automobile. Such evidence would normally relate to the proximate cause element of the cause of action, whether plaintiff "could have acted within her ability so as to have avoided the collision" with defendant (Creech v. Riss & Company, 285 S.W.2d l. c. 562 [7, 8]; Miller v. St. Louis Public Service Company, 389 S.W.2d l. c. 771–772 [3, 4]) had plaintiff's breach of lookout duty been established.

Fairly stated, the evidence established that the collision occurred on January 21, 1965, shortly before 1:55 A.M. at the uncontrolled intersection of Broadway and Nichols Road in Kansas City, Missouri. Broadway, a north and south street, and Nichols Road, an east and west thoroughfare, were each 60 feet wide. The intersection was level, the pavement was dry, and both parties agree the streets were lighted. One block north of, and parallel to, Nichols Road was 47th Street. Defendant measured the distance between them and found it

to be 335 feet, while plaintiff estimated that distance at not more than 300 feet. The speed of the vehicles on Broadway and Nichols Road is limited by law to 25 miles per hour and to 20 miles per hour in the intersection. Each of those streets accommodated three lanes of traffic, two for moving vehicles, and one for those parked. On the northeast corner of Nichols Road and Broadway was located a Russell Stover Candy Store which Officer Poole described as coming "right up to the sidewalk line". Defendant's photographic exhibits 1, 2, and 3 revealed that the south wall of the candy store extended east and west along Nichols Road, although its full length is not depicted. The west wall extended north and south along Broadway. The entrance-way at the southwest corner of the building was fashioned obliquely so that it faced diagonally across the intersection. Motorists going west on Nichols Road keeping a lookout for approaching traffic southbound on Broadway and, reciprocally, motorists going south on Broadway keeping a lookout for approaching traffic westbound on Nichols Road would be confronted with the visual barrier of the candy store building.

Plaintiff Corbin had been driving her 1962 Corvair in the middle lane of Nichols Road. She testified her headlights were on and that the mechanical condition of her car was good. She approached the intersection at 20 miles per hour; the jury could have found that she reduced her speed to 15 to 20 miles per hour as she entered the intersection, but that is not important. Because of the presence of the candy store to her right, "(y)ou have to get pretty much up to the intersection before you can see" up to 47th Street at its intersection with Broadway, one block to the north. Plaintiff testified that when the · front end of her car was 8 or 10 feet east of the intersection, she saw defendant's car for the first time. Defendant was then about two car lengths "right to the south part of the intersection" of Broadway with 47th Street coming south at an undetermined speed. At that time, she estimated

defendant's car to be from 6 or 8 car lengths from the intersection of Broadway and Nichols Road, but described that as "(a) guess, more or less. It was quite aways away, yes". (She did not say which part of Broadway defendant's car then occupied.) She then looked to her left, proceeded into the intersection, "because it was clear", reached the middle of the intersection, looked again to her right, then saw defendant's car for the second time, two car lengths away, coming at a speed of 40 miles per hour or more. She applied her brakes. She heard no sounding of horn or application of brakes from defendant's car. When plaintiff's car was three-fourths through the intersection and defendant one car length into it, they collided. It seems not to have been disputed that the point of impact occurred somewhere, not precisely shown, in the northwest quadrant of the intersection. For our purposes, we need not elaborate further.

Defendant Wennerberg's testimony was spare, and as it related to lookout, was even more meager. The pith of that testimony is found in this answer to his counsel's question: "As I approached the intersection, I looked to the left and saw this Corvair approaching, and presumed I had time to cross the intersection. I looked to the right and when I looked back to the left again, her car was right on my left * * * Then the crash." Add to that, the movement of his car between 47th Street and Nichols Road south on Broadway in the lane next to the center line at a speed not exceeding 20 to 25 miles per hour, his description of how the cars came together, the "physical obstruction" the Candy Store presented to drivers "back from the intersection", other snatches of his testimony we have already related, and his total evidence of lookout is recapitulated.

This evidence offers no reasonable basis for the inference that plaintiff, in the exercise of the highest degree of care, did not see defendant's automobile at the first possible moment. It gives no indication of the location or speed of either vehicle

when, in the maintenance of a proper lookout, plaintiff could have seen defendant's automobile or become aware of the impending danger. It does not even inform a jury of the location of either vehicle when defendant actually first saw plaintiff, at which time and from which place a jury could reasonably have found that defendant could also have been discovered by plaintiff. Defendant's contributory negligence lookout submission finds no support in his own evidence. Recourse to plaintiff's evidence to supply the lacking proof is unavailing. Plaintiff saw defendant's car for the first time when her vehicle was 8 or 10 feet east of the intersection. That it was at or very near that point from which she first could have seen defendant is amply demonstrated by defendant's photographic exhibit 1 to which she had reference during her testimony. At that point, her view to the north, or right, was not impaired by the store structure only because she was then abreast of the oblique entranceway. From then she could, and did, see defendant's vehicle two car lengths south of the intersection of Broadway and 47th Street. Defendant's photographic exhibit 2, however, reveals that even from a point palpably a very few feet east from where defendant's exhibit 1 was taken, the view north on Broadway would have been extremely limited, falling far short of the intersection with 47th Street, the area defendant then occupied. A lookout to that intersection became a physical possibility only when plaintiff's vehicle reached a point very near 8 or 10 feet east of the intersection of Nichols Road and Broadway. There was no evidence to the contrary. That is when plaintiff looked and that is when she discovered defendant's vehicle, at the first possible opportunity.

■ "The object and purpose of the strict requirement that persons operating motor vehicles keep a proper lookout upon public streets and highways is that they may acquire knowledge of the presence of other persons and objects on such streets and highways, and an awareness of dangerous situations and conditions." Miller v. St. Louis Public Service Company, l. c. 771. Having acquired the knowledge of defendant's presence by looking and discovering at the first possible opportunity, plaintiff acquitted herself of lookout. O'Neil v. Claypool, 341 S.W.2d l. c. 135; Levin v. Caldwell, 285 S.W.2d l. c. 659 [3]. Whatever may have been plaintiff's dereliction under the evidence, it was not failure to keep a careful lookout. (See for instance, the submissions authorized in MAI 17.04 and Nydegger v. Mason, Mo., 315 S.W.2d 816, 820 [4]; Stakelback v. Neff, Mo.App., 13 S.W.2d 575, 577 [1]; Sweatman v. McClure, Mo.App., 416 S.W. 2d 665, 668 [3]). The evidence did not justify the submission of plaintiff's contributory negligence to the jury. Therefore, plaintiff was not required to negate that affirmative defense in her verdict directing instruction and her failure to do so was not error. Ernst v. Schwartz, 445 S.W.2d l. c. 379.

Appellant's other point is more readily dispatched. We have concluded that it was error for the court to have given on behalf of plaintiff Instruction No. 4 defining "right of way" (MAI 14.02):

"The phrase 'right of way,' as used in these instructions, means the right of one vehicle to proceed ahead of the other.

"When two vehicles do not reach an intersection at approximately the same time, the vehicle which enters the intersection first has the right of way provided a very careful person would so proceed under the same or similar circumstances."

By it, an extraneous, distracting, misleading and confusing element was introduced into the law of the case to the prejudice of defendant.

■ The only issue submitted to the jury in plaintiff's verdict directing instruction was whether defendant negligently failed to keep a careful lookout, and, if so, whether such negligence directly caused

plaintiff's damage. Considerations of "right of way" were extraneous to the jury's determination of that issue because, even though plaintiff had entered the intersection first, that would not tend to prove defendant failed to keep a careful lookout, nor (had the contributory negligence instruction which was actually given been justified) that plaintiff had in fact kept one. Dixon v. Kinker, Mo.App., 410 S.W.2d 347, 350–1 [4–6]; Wilson v. Toliver, 365 Mo. 640, 285 S.W.2d 575, 582 [10]. Under the evidence, Instruction No. 4 was particularly damaging to defendant. Plaintiff testified that she entered the intersection first. Defendant did not dispute it and the record would indicate that he could not have done so effectively. There was no reason for the jury not to have believed plaintiff as to that fact. The inevitable result was to divert the jury's attention from lookout, the only genuine issue in the case (whether it be that of plaintiff or defendant under the submissions) to that of failure to yield the right of way, a spurious one, to the consequent disadvantage of the defendant. See: Will v. Gilliam, Mo., 439 S.W.2d 498, 501 [1–3].

The instruction was also misleading and confusing. At the outset of the trial, the court charged the jury in the required manner that "the law applicable to this suit is given you in these instructions and in other instructions * * * and it is your duty to follow all such instructions". (MAI 2.02) At the conclusion of the evidence the jury was given the lookout instructions and that defining "right of way", all under the imprimatur of the court. The jury was required to accept them and give them effect as "the law applicable to (the) suit". In doing so, they somehow had to deal with the anomaly of an instruction which undertook to define " 'right of way' as used in (the) instructions", when no other contained that phrase or required its definition, while at the same time relating it to the issue of lookout which was also submitted. Under the evidence, the jury could well have understood Instruction No. 4, when considered

with the others, to mean that if plaintiff entered the intersection first, she was entitled to the right of way, that defendant's failure to yield after plaintiff entered the intersection caused the collision and that such conduct was equivalent to failure to keep a careful lookout. Yet, the one does not tend to prove the other. Haymes v. Swan, Mo.App., 413 S.W.2d 319, 327 [14–17]. There are other explications, equally plausible, but it is idle to speculate concerning them. Instruction No. 4 was vagrant, unrelated to the issue submitted or to any of the other instructions, and therefore misleading. Considered together, as they must be (Jefferson v. Biggar, Mo., 416 S.W.2d 933, 939 [5, 6]), the instructions were ambiguous, confusing and not susceptible of ready understanding by a jury of ordinary, intelligent laymen. Sanfilippo v. Bolle, Mo., 396 S.W.2d 690, 692 [1]. The jury could not have arrived at its verdict except by resort to speculation and conjecture as to what was meant by the law which was given to govern their decision. It was error to have given Instruction No. 4.

■ It is plaintiff's contention, however, that although Instruction No. 4 does not relate to any issue submitted and should not have been given, its effect was that of a harmless, abstract statement of law. She cites Detrich v. Mercantile Trust Company, Mo., 292 S.W.2d 300; Jones v. Rash, Mo., 306 S.W.2d 488; Conley v. Berberich, Mo.App., 300 S.W.2d 844 and Cronin v. Northland Bowling Lanes Company, Mo.App., 389 S.W.2d 863, to the effect that an instruction submitting an abstract statement of law does not necessarily result in error. We agree. Those same authorities also uniformly hold, however (quoting from Benham v. McCoy, Mo., 213 S.W.2d 914, 920 [13], their common source):

"While instructions containing abstract statements of law should not be given, the giving of such an instruction is not reversible error *unless it appears from the circumstances that the instruction*

*was confusing, misleading and prejudicial in the particular case."* (Emphasis supplied)

See Jones v. Rash, 306 S.W.2d l. c. 494 [11]; Detrich v. Mercantile Trust Company, 292 S.W.2d l. c. 303 [6, 7]; Conley v. Berberich, 300 S.W.2d l. c. 848 [2, 3] and Cronin v. Northland Bowling Lanes Company, 389 S.W.2d l. c. 868 [6–9]. In the case before us, the abstract statement of law was confusing and misleading, and thus prejudicial.

It occurs to us that even a cursory glance at MAI would have disclosed the impropriety of submitting pattern Instruction 14.-02 defining "right of way" unless the ultimate issue of failure to yield the right of way was submitted concurrently as a basis for plaintiff's recovery or its denial. "Definitions—Right of Way—General Comment", MAI 14.01, to which "Committee's Comment" under MAI refers, makes this explicitly clear. It informs that failure to yield the right of way is an ultimate issue. Submitting this issue without explanation might be inadequate since jurors are not apt to understand which party has the duty to yield the right of way in every situation. For this reason, a number of definitions have been prepared, (MAI 14.-02 among them), to explain when the duty to yield exists. To the same effect is the textual provision in "Definitions", at page L (second edition) of the section given to "How to Use This Book". In that same section, at page LIII, "Notes on Use and Committee Comment", we find: "The committee comments are intended to show the source of the approved instructions and to aid lawyers in finding some of the authorities relevant to their cases". In choosing appropriate instructions, therefore, "it is essential that attorneys carefully consider the committee comments * * *". Peak v. W. T. Grant Company, Mo., 409 S.W.2d 58, 60 [1]. And while to disregard the guidance offered by the committee comments does not plainly result in presumptively prejudicial erorr, as when applicable Notes on Use are not followed, (Sweat-

man v. McClure, 415 S.W.2d l. c. 667 [3]; Haymes v. Swan, 413 S.W.2d l. c. 326 [13]), it tends to prejudicial error, and in this case resulted in it.

Appellant raises an additional point which we do not find necessary to discuss or determine. In the event of retrial, respondent will take heed of its implications and prepare accordingly.

The judgment is reversed and the cause remanded for new trial.

All concur.