## WILLIAM OWENS v. A. S. McCLEARY, Appellant.

### Division One, March 12, 1926.

1. **PHYSICIAN: Qualifications and Duties: Liability.** The law exacts of a physician or surgeon who undertakes to treat a patient (a) that he possess that degree of skill and learning which is ordinarily possessed and exercised by the members of his profession in good standing; (b) that he use reasonable care and diligence in the exercise of his skill and the application of his learning; and (c) that he act according to his best judgment. Conversely, he is liable for an injury to his patient resulting from want of the requisite knowledge and skill, or the omission to exercise reasonable care, or the failure to use his best judgment.

2. ———: **Malpractice.** A failure by a physician or surgeon in treating a patient to employ the methods followed or approved by his school of practice evidences either ignorance or experimentation on his part, neither of which the law tolerates. Conformity with the established mode of treatment is the test ordinarily applied in determining, in a given case, whether he has brought to the treatment of the patient the requisite knowledge and skill. If he wishes to avoid civil liability he must employ in the treatment of his patients methods which are recognized and approved by his profession as most likely to produce favorable results.

3. ———: ———: **Disapproved Methods: Neglect.** Evidence tending to show that defendant physician and surgeon treated plaintiff for piles and in doing so did not use any of the methods of treatment approved by his profession, but on the contrary employed a method distinctly disapproved by them and thereby inflicted upon plaintiff serious injury, affords, at least, a sufficient basis for a finding by the jury that the requisite knowledge, skill and care were lacking. And this, and further evidence that he neglected to dress or drain incisions made in opening abscesses that formed following the in-

jection of fluids into the rectum, is sufficient to take to the jury the case of the patient suing for damages for malpractice.

4. ———: ———: Instruction: Negligence: No Guiding Acts. An instruction, for plaintiff in his suit against a physician for malpractice, which directs the jury to determine whether "in making said treatment the defendant carelessly and negligently injured the plaintiff," without giving them any guidance as to the specific acts or omissions, which, under the law, would constitute negligence, and therefore permitting them to base a finding for plaintiff on any theory of negligence they may construct or evolve out of their own minds, is erroneous.

5. ———: ———: ———: Abstract Statement of Law: Coupled with Another: Confusion. An instruction which is a mere abstract statement of the law as to the degree of knowledge and skill which one who holds himself out as a specialist must bring to the discharge of his duties in treating patients, is defective; it should also contain a direction which will enable the jury to make an intelligent application to the issues of the case of the rule relating to necessary qualifications and use of approved methods. And where such abstract instruction is coupled with another which simply defines negligence as a failure to exercise ordinary care, the two are apparently contradictory and calculated to confuse the jury.

Physicians and Surgeons, 30 Cyc., p. 1570, n. 19; p. 1575, n. 51, 54 New; p. 1576, n. 67, 68; p. 1588, n. 83; p. 1590, n. 94. Trial, 38 Cyc., p. 1603, n. 59; p. 1605, n. 69; p. 1615, n. 21; p. 1625, n. 65.

Appeal from Jackson Circuit Court.—*Hon. Charles R. Pence*, Judge.

REVERSED AND REMANDED.

*Frank M. Lowe* for appellant.

(1) When the competent evidence fails to support the allegations of the petition, it is the duty of the court to take the case from the jury. The court, therefore, erred in refusing to give defendant's instruction in the nature of a demurrer to the evidence. Spain v. Birch, 169 Mo. App. 94; Fausette v. Grim, 186 S. W. 1179; Connelly v. Cone, 224 S. W. 1011; Nevinger v. Haun, 196 S. W. 39. (2) The court erred in giving plaintiffs' instruc-

tion number 1, for the reason that said instruction fails to cover the pleadings and the evidence in the case, in the following particulars: (a) It failed to require the jury to find from the evidence what negligent or careless act of the defendant caused plaintiff's injury, if any. Young v. Wolff, 190 Mo. App. 48; Hales v. Raines, 162 Mo. App. 57; Allen v. Transit Co., 183 Mo. 432; Benjamin v. Railroad, 245 Mo. 612; Schaaf v. Basket Co., 151 Mo. App. 46; Mulderig v. Railroad, 116 Mo. App. 667. (b) It left the jury to speculate upon the meaning of "proper treatment" when the record shows that expert medical men cannot and do not agree upon the significance of that term. McGee v. Railway, 124 Mo. 530; Kelly v. Railway, 258 Mo. 62; Leinbach v. United Rys. Co., 227 S. W. 848; Ostopshook v. Cohen, 227 S. W. 643; Cecil v. Wells, 259 S. W. 847; Waller v. Graff, 251 S. W. 733; Bonnarens v. Lead Belt Ry., 273 S. W. 1047.

*Sam O. Hargus, W. H. Hallett* and *W. M. Bowker* for respondent.

(1) In a malpractice case the question of the negligence of the defendant and the causal connection between such negligence and the injury may be established by circumstantial evidence. Eichold v. Poe, 217 S. W. 282; Krinard v. Westerman, 279 Mo. 680. (2) A physician holding himself out as having special knowledge and skill in the treatment of particular diseases, and sued as such, is bound to bring to the discharge of his duty as such specialist a special degree of skill and knowledge possessed by physicians who are specialists in the treatment of such diseases in the light of the present state of scientific knowledge. Krinard v. Westerman, 279 Mo. 680. (3) Mere non-direction in an instruction on the measure of damages because it does not include certain elements, is not error. It is the duty of defendant, if he desires the jury restricted to certain elements, to offer an appropriate instruction to that effect. Wheeler v.

Bowles, 163 Mo. 398; Longan v. Weltmer, 180 Mo. 322; Reeves v. Lutz, 179 Mo. App. 61; Quick v. Williams, 271 S. W. 834.

RAGLAND, P. J.—This is an action for malpractice. Plaintiff obtained judgment in the circuit court for $15,-000, to reverse which defendant prosecutes this appeal.

The petition after setting out preliminarily that plaintiff was afflicted with a mild case of piles, that defendant represented and held himself out as a physician specially skilled in the treatment of piles and that as such physician undertook to treat plaintiff for that disease, charges negligence as follows:

"That in so doing [treating plaintiff] he negligently and carelessly caused to be inserted into the rectum of the plaintiff some sort of an instrument the exact character of which is unknown to the plaintiff, and carelessly and negligently inserted an injection, the character of which is unknown to the plaintiff, but that the said instrument and the said injection were either not adapted to the proper treatment of the plaintiff's disease, or that it was so negligently and carelessly administered that the plaintiff was then and there subjected to great pain, discomfort and injury, resulting in the formation of ulcers and abscesses in the rectum of the plaintiff.

"The plaintiff says that after the said careless and negligent treatment of the plaintiff by the defendant, as aforesaid, the said defendant failed and neglected to properly care for and treat the plaintiff in and about his said disease, but so negligently and carelessly neglected the treatment of plaintiff that infection in the rectum ensued, causing the plaintiff to suffer great pain and mental anguish for many successive weeks, during which time said ulcers and abscesses and infection continued to grow worse from day to day, during which time said defendant failed to make proper examination for the purpose of determining the condition of the plaintiff, as aforesaid, or attempting to discover and remove the cause of his said

condition, and that by reason thereof, the said plaintiff was reduced in health to the point of death, during all of which time he suffered excruciating pain, and that by reason of said infection, ulcers and abscesses, the muscles and tissues in and about the rectum of the plaintiff were impaired and destroyed, so that he has thereby suffered a permanent injury, and is unfit to perform any manual labor, or labor of any character, and that he will be for the remainder of his life permanently injured and unable to perform labor.''

The issue of fact as to the negligence was framed for the jury in plaintiff's Instruction One as follows:

''If you . . . believe and find from the evidence that the defendant did treat him for such disease by inserting some kind of an instrument into his rectum, and injecting some kind of serum or fluid into his rectum, and that, in making said treatment, the defendant carelessly and negligently injured the plaintiff and subjected him to great pain and discomforture, and thereby caused the formation of ulcers and abscesses in the rectum of the plaintiff; and that after said injury to the plaintiff as aforesaid, if you find he was so injured, the defendant carelessly and negligently failed to exercise reasonable care to provide proper treatment of plaintiff to relieve him from such injury caused, if any, and that, as a result thereof said abscesses and ulcers continued to form in his rectum and grew worse, and caused him great pain and suffering, and that, as a result thereof the plaintiff was greatly reduced in health and continued to grow worse until the muscles and tissues in and about the rectum of the plaintiff were injured or impaired, then your finding,'' etc.

Appellant's chief contentions are:   (1)  That the trial court should have directed a verdict for defendant on the ground that the allegations of the petition were not supported by the competent evidence in the case; and (2) that the giving of Instruction One was error because, as alleged, the evidence was insufficient to take the case to

the jury, and for the further reason that it did not require a finding by the jury of some specific act of negligence. These propositions call for the facts which the evidence as a whole tended to show, either directly or by reasonable inference.

At the time respondent became a patient of appellant's he was afflicted with a mild case of piles. He was forty-six years of age, strong, robust and in good general health. During the preceding year he had been employed as a mechanic in a garage; his work had required at times heavy lifting and the exercise of considerable muscular strength. Prior to that he had worked at his trade of blacksmith. He had been afflicted with piles in a mild form for eight or ten years. While he had from time to time suffered some pain and inconvenience from it, it had never caused him any illness or loss of time from his work. Appellant had held himself out as a "rectal specialist." He was maintaining at Kansas City what his advertising matter designated as "the largest institution in the world devoted exclusively to treating rectal diseases." His slogan was: "Piles cured without surgery." Respondent received some of appellant's "literature" and wrote him. After a number of letters were exchanged respondent, on February 2, 1921, went from his home at Nevada, Missouri, to Kansas City, and put himself in appellant's hands for treatment. On the day of his arrival he was examined by appellant and told that he had a mild case of piles. On the second day thereafter the treatment began. As described by respondent it consisted of inserting into his rectum a speculum and then injecting some kind of fluid which burned, set him afire. One such treatment was administered each day. The pain caused by each exceeded that of the previous one. After a few days the pain became so constant and intense that respondent was unable to sleep at night. Presently he became very ill; he became bedfast; he developed a high fever. At the end of three weeks abscesses had formed in his rectum. On February 27th, appellant opened the abscesses

with a sharp instrument. This he did again on March 3rd. Following each of the operations he did nothing further in the way of dressing and draining the wounds. On March 6th, appellant called an ambulance and sent respondent to a hospital. He remained in the hospital approximately two weeks, during which time he was extremely ill and suffered excruciating pain. He was then taken into a private home and attended by another physician. After five weeks he was removed to his home at Nevada, but remained bedfast for five weeks thereafter.

Since receiving "treatment" at the hands of appellant respondent has never been able to engage in manual labor which requires any physical exertion. He has at all times had to carry a cushion with him in order to be able to sit down. Just preceding the trial in February, 1923, he was subjected to a physical examination. The conditions disclosed are best described in the language of the specialist who made the examination: "Just to the right of the 'rectum, I find he has an indurated area—or caked, to use the common expression, area—on the right side of his buttocks as big as my four fingers would be here. This goes down fairly deep, and upon pressure over this indurated area and with a piece of cotton I find I can squeeze out pus from his rectum. The sphincter— that is the contractor muscle—is very much relaxed; it's thick and hard. . . . His rectum is smooth and hard; hasn't got the normal folds of the normal rectum; it is loose; it feels more like a tube. . . . The sphincter muscle is the muscle at the end of the large bowel that controls the bowels. . . . I take it that this man will have to have another operation to get rid of that necrosed and abscessed tissue that he has got on the right cheek of his buttocks. He has partial loss of control of the sphincter muscle; but if that will get any better or not I can't tell; and I don't think any body else can tell; it is probably fifty per cent control now. . . . His pain will probably last as long as he has got the indurated and necrosed old abscess; I believe, after that is gone, probably in the course of a few years this pain will be overcome."

With respect to the approved methods of treating piles and the one employed by appellant in treating respondent, Dr. George B. Norberg, a specialist in general surgery, testified:

"Q. Doctor, what is the approved method of treating piles, according to the best standards of the medical profession; on a man suffering with ordinary piles what is the approved method of treatment by a specialist in your profession today? A. Either by the ligature method or clamp and cautery.

"Q. Just explain? A. The ligature method is where the hemorrhoid or pile is pulled up and loosened from its base and tied with silk or cat-gut; and the clamp and cautery method is where the pile is brought up and is clamped till it's completely devitalized, then it is seared with a red-hot iron over that, to keep it from bleeding afterwards. The searing is merely to close up the blood vessels so it won't bleed.

"Q. Doctor, I will ask you, if a man is suffering from piles, whether there is any kind of fluid or injection that you can put into his rectum that will burn and sting several hours after a treatment, that will cure that condition? A. Well, the medical profession know of that sort of treatment, just the same as anybody else, but I don't think it is practiced by the regular medical profession.

"Q. What is that sort of treatment liable to cause in the rectum if a man is suffering from piles? A. In the injection method the principle is this, that whatever is used has to be escharotic or caustic enough to shut off the blood supply to that hemorrhoid, and with a ligature dressing so as to cause a slough. There is no serum that would cause them to absorb. It's got to be devitalized, killed, the blood supply to it shut off, so it will slough away.

"Q. What is the danger of using that serum or fluid in the rectum? A. Well, the danger, as I can see, is in the first place doing away with a lot of mucous mem-

brane, and the other thing is that there is no way you can control the burning effect or the escharotic effect of the chemical you put in there; it might burn deeper in one person than in another. If you light a match on your hand it might just burn the skin, or it might burn clear through to the muscle. You can't control burn.

"Q. What would it cause in the rectum if it did do that? A. In the first place it might cause a contraction. It would certainly cause scarring and crippling of the sphincter, which would lessen the activity of the thing, and, of course, if it is injected deep it would probably produce a sloughing and an abscess.

"Q. Doctor, take a man who was suffering with a slight case of piles, had been for several years treating himself, never been treated by any physician, a strong, able-bodied man, able to do any kind of physicial work, had no fever, no chills, no special pain in his rectum, that should go to a man's place of business to receive treatment for piles, and that they should inject some kind of fluid in there that caused it to burn and sting for several hours afterwards, and that at the end of two or three weeks after he had received this treatment, he has become very ill and sick in bed, with chills and fever, and is operated upon for an abscess found in the rectum—what would your judgment be as to whether or not this treatment that he had received had or had not caused the abscess which was found three weeks later? A. Well, if he had had an injection of that sort made in and about his rectum or anus, I would say that did it. It could do it in two weeks both by this caustic and corrosive effect of that chemical, and here's another thing that must be borne in mind, the rectum is a very hard place to sterilize, and when you put the hypodermic needle through, it's almost impossible that they can put that needle through that mucous membrane lining in the rectum without forcing some of the colon poison, which normally inhabits the rectum, in there, and if you get that in there it is going to produce an abscess."

There was no direct evidence that appellant used a hypodermic needle in treating respondent, but according to Dr. Norberg such use was a necessary incident of the treatment employed. In this he was corroborated by one of appellant's advertising circulars in which it was said: "The great advantage of my method is that it is a mild non-toxic medical treatment. The mild non-toxic medicine is applied directly to the diseased veins *underneath 'the mucous membrane of the rectum,* thus reaching and curing the cause of the trouble."

Respondent testified that at the conclusion of the treatment on the fourth day the removal of the speculum caused him great pain. From the evidence as a whole it is quite clear that such pain must have been occasioned, not from an improper handling of the instrument, but from its having come in contact with an abscess then forming. In any event there was nothing to show that the pathological conditions which set up soon after the treatments began resulted in any way from an improper or careless use of the speculum.

Appellant denied that he ever treated respondent for piles. He testified that upon his first examination he found ulceration and pus in the rectum, which it was necessary to get rid of before treating him for piles; that to remove these conditions he began an antiseptic treatment, which consisted of injecting "a weak solution of iodine, echinacea and also genlose;" that during the treatment an abscess formed in the rectum, which he opened upon two different occasions; and that subsequently, as the abscess was not yielding to his treatment, he sent respondent to a hospital where such a patient could be given the requisite care and attention.

I. The law exacts of a physician or surgeon who undertakes to treat a patient: (1) that he possess that degree of skill and learning which is ordinarily possessed

and exercised by the members of his profession in good standing, practicing in similar localities; (2) that he use reasonable care and diligence in the exercise of his skill and the application of his learning; and (3) that he act according to his best judgment. [Krinard v. Westerman, 279 Mo. 680.] Conversely he is liable for an injury to his patient resulting from want of the requisite knowledge and skill, or the omission to exercise reasonable care, or the failure to use his best judgment. Conformity with the established mode of treatment is the test ordinarily applied in determining whether a physician or surgeon, in a given case, has brought to the treatment of his patient the requisite knowledge and skill. A failure to employ the methods followed or approved by his school of practice evidences either ignorance or experimentation on his part. The law tolerates neither. If he wishes to void civil liability he must employ in the treatment of his patients methods which are recognized and approved by his profession as most likely to produce favorable results. Such seems to be the established rule. [Carpenter v. Blake, 60 Barb. 488; Pike v. Honsinger, 155 N. Y. 201; Sawdey v. Railroad, 30 Wash. 349; Miller v. Toles, 183 Mich. 252.]

*Physician: Liability.*

In the case at bar there was evidence tending to show that appellant treated respondent for piles and that in doing so he did not use any of the methods of treatment approved by his profession, but on the contrary employed one distinctly disapproved by them, thereby inflicting upon respondent serious injury. If the failure to follow approved methods was not enough of itself to fix liability, it at least afforded a sufficient basis for the jury to find that the requisite knowledge, skill, or care was lacking.

There was also evidence that appellant neglected to dress or drain the incisions made in opening the abscesses.

In view of the foregoing the trial court correctly held that there was evidence to take the case to the jury.

II.   Instruction One directed the jury to determine whether "in making said treatment the defendant carelessly and negligently injured the plaintiff" without giving them any guidance as to the specific acts or omissions which, under the law, would constitute negligence.   It permitted them to base a finding for plaintiff on any theory of negligence which they could construct or evolve out of their own minds and was therefore erroneous.   [Allen v. Transit Co., 183 Mo. 411, 432; Mulderig v. Railroads, 116 Mo. App. 655, 667.]

Specific Acts: Conjecture.

Under the evidence liability can be predicated on just two things: the mode of treatment employed and the failure to keep drained the openings made in lancing the abscesses.   The instruction should have framed specific issues with reference to these.   On the state of the evidence shown by the record the jury should have been told that if they found that defendant treated plaintiff for piles, and that in doing so he employed a method that was neither followed nor approved by the medical profession, and that as the direct result of the use of such unapproved method, and in consequence thereof, plaintiff sustained injury, they should return a verdict for plaintiff.   It is conceivable, however, that the evidence on another trial might take such a range that it would be for the jury to say whether appellant in using a method of treatment not recognized by the profession generally breached his duty to respondent.

The evidence does not disclose how respondent was affected, if at all, by appellant's failure to take any measures for the continued draining of the abscesses after he had opened them.   It is conceivable that such neglect added to respondent's suffering and prolonged his illness; it may have contributed in bringing about the unfortunate physical condition in which he now finds himself.   The proof, however, leaves it all to conjecture.   That this specific act of negligence cannot be made a basis for recovery unless respondent was injuriously affected by it is of course too plain to require elaboration; yet the elementary principle involved in this statement was violated by

the instruction under consideration.   These .observations are made in view of another trial of the cause.

III.   Appellant assigns as error the giving of plaintiff's instructions numbered two and three.   The first is a mere abstract statement of the law as to the degree of knowledge or skill which one who holds himself out as a specialist must bring to the discharge of his duty in treating patients.   It contains no direction of any kind which would enable the jury to make an intelligent application of the rule stated to the issues in the case.   The second instruction simply defines  negligence as a failure to exercise ordinary care.   As applied to the degree of care that defendant was bound to exercise in treating plaintiff the two instructions, in the form in which they were given, were apparently contradictory and consequently were calculated to confuse the jury.

Appellant makes numerous other complaints as to instructions given and refused and as to the admission of evidence.   But his contentions as to these are so plainly devoid of merit that an opinion should not be encumbered with their consideration.

Because of the error in giving plaintiff's Instruction 1 the judgment is reversed and the cause remanded.   All concur.