Margaret A. MULLEN, (Plaintiff) Respondent,

v.

ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, (Defendant) Appellant.

No. 51056.

Supreme Court of Missouri,

En Banc.

April 12, 1965.

Opinion Modified on Court's Own Motion and Rehearing Denied May 10, 1965.

Walter S. Berkman, St. Louis, for respondent.

Donald W. Bird, St. Louis, for (defendant) appellant St. Louis Public Service Co.

FINCH, Judge.

Plaintiff obtained a judgment for $10,000 for personal injuries received while she was a passenger on a streetcar operated by defendant in the City of St. Louis. That judgment was affirmed on appeal by the St. Louis Court of Appeals. 380 S.W.2d 950. The case then was transferred to this court.

Defendant's streetcar was traveling east on Olive Street. It made a stop just west of Grand Avenue on the south side of Olive Street. Several persons, including plaintiff, an 81-year-old lady, boarded the streetcar at that point. It then started up, crossed Grand Avenue, and headed east on Olive. A drug store is located at the northeast intersection of Grand and Olive and a parking lot is located to the east of and immediately behind said drug store. There were two driveways from the parking lot to Olive Street and the westernmost driveway was approximately 140 feet east of Grand Avenue. At that point Olive Street is approximately 36 feet wide. There were two sets of streetcar tracks, one eastbound and one westbound. Each set of tracks was 4 feet 10 inches wide, and the space between the tracks measured 5 feet 4 inches. The distance between the outer rails and the curb on each side of the street was 10 feet 6 inches. There was no street opposite the entrance to the parking lot, and cars leaving the lot could turn and go west on Olive or they could turn east on Olive.

As the streetcar was proceeding east on Olive, one Charles Lofton drove an automobile from the westernmost driveway leading from the parking lot. Defendant's operator applied his emergency brakes on the streetcar and made a sudden stop. The driver of the automobile also applied his brakes, and the car and the streetcar stopped approximately one foot apart. Plaintiff had not yet been seated and the sudden application of the brakes on the

streetcar caused her to fall and injure her back.

Plaintiff's case was submitted to the jury on the theory that defendant's operator failed to keep a vigilant lookout. Defendant's first contention is that plaintiff failed to make a submissible case on this theory and that the judgment should be reversed outright. To determine this question, a further examination of some of the evidence is necessary.

Chester Daugherty, the streetcar operator, testified that when he was about even with the loading zone east of Grand Avenue he saw an automobile coming out of the parking lot. At that point the streetcar was about 27 feet east of Grand, which placed it approximately 113 feet west of the driveway in question. At that time the streetcar was traveling 10 to 15 miles per hour. Daugherty testified that he did not then apply his brakes, nor does he remember sounding his bell. When he reached a point 40 feet to 45 feet from the entrance to the parking lot, he saw the Lofton automobile approach the path of the streetcar and he applied his emergency brakes at that time, stopping about one foot from the automobile. Daugherty was asked whether he had testified in his deposition that he had not paid any attention to the automobile until it got in his path. He stated that he had so testified, but that he meant that he had no reason to believe the car was going to continue across Olive Street, and that he saw it but didn't notice it because it hadn't gotten into his path. By this, he apparently meant that he was aware of the car but did not observe it closely until it got in his path. Daugherty did not remember whether there were any obstructing cars parked on the north side of Olive Street, but stated that he sat 6½ feet above the street and could see over the tops of cars.

Charles Lofton and his passenger, James Hoch, testified that Lofton straddled the center of the westernmost driveway as he drove out of the parking lot; that he stopped to look for pedestrians as he approached the sidewalk; that he stopped his car again when his front wheels were at the curb line; that a car was parked on the north side of Olive just west of the driveway which obstructed his view to the west; that this parked car forced a wide turn into Olive Street; that he started his car from where it was stopped at the curb line, but didn't see the streetcar approaching from the west until the front end of his car was out into Olive Street about 10 feet, and that he applied his brakes and stopped his car with the front end thereof at just about the center of the street. Lofton further testified that with the car parked on the north side of Olive Street just west of the driveway it was not possible to make the right-hand turn from the driveway onto Olive Street and remain entirely on the north side of the street. He further testified that at no time, as he left the parking lot, did he go more than three miles per hour.

Several passengers on the streetcar also testified. They first observed the Lofton car at various points, at least one observing it as it came out of the parking lot. Others saw it as it was leaving the sidewalk or was out in the street. All said the car was moving rapidly and did not make any stops. Some of these witnesses agreed with Daugherty that when the car came to a stop it was partially across the eastbound streetcar tracks and partially in front of the streetcar. Lofton and his passenger testified that the car did not reach the streetcar tracks and stopped about one foot short of the side of the streetcar, headed somewhat to the southwest.

Defendant contends that Daugherty, who was called as a witness by the plaintiff, testified that he observed the Lofton car from the time it emerged from the parking lot until it stopped, and that since he did testify that he observed it at all times, there was no failure to keep a lookout shown by the evidence. Defendant contends further that Lofton's testimony was that he made two stops with his car and was going very

slow, and finally stopped at the center of the street before hitting the streetcar, and that this evidence shows there never was any danger of a collision. Defendant concludes that whether Daugherty's version or Lofton's version is accepted, failure to keep a lookout could not have been the proximate cause of plaintiff's injuries and no submissible case was made.

Defendant's position cannot be sustained. The mere fact that Daugherty testified that he looked and saw the car at all times is not sufficient to defeat a lookout submission. He was required to keep a vigilant lookout. Considering the evidence in the light most favorable to plaintiff, we have a situation in which Daugherty, when approximately 113 feet away, saw an automobile coming rapidly out of the parking lot without stopping. There was no evidence offered to show any indication of the direction in which he would turn. If the automobile turned to the east on Olive, it of necessity would cross over into the pathway of the streetcar. If it turned west, with a car parked at the north curb of Olive just west of the parking lot, the turn to go to the west, according to witness Lofton and his passenger, could not be made without getting across the center line of Olive Street, which meant that the car would get into the pathway of the streetcar. This testimony cannot be said to be unworthy of belief, especially in view of the fact that defendant offered in evidence a moving picture film of a test made by defendant of a car leaving the parking lot and turning to the west, and the film disclosed that the car in making the turn reached the center of Olive Street. The film and testimony disclosed that the car parked at the north curb line of Olive Street in the test was a compact car (it showed a distance of two feet between the side of the parked compact and the yellow line marking the limit for parked cars), and the jury could have concluded that, if the parked car had been a standard size car, the car in the test would have crossed the center line in making the turn to the west on Olive Street.

Several witnesses stated that the Lofton car made no stops and was coming rapidly, all of which would indicate the necessity of a wide turn and an increased likelihood of a collision. All of this was visible to defendant's operator if he kept a vigilant lookout. From this evidence a jury could have found that if defendant's operator had maintained a vigilant lookout and observed these occurrences, he could and should, with the means and ability at hand, have so acted that the sudden stop made after the car was getting into the actual pathway of the streetcar could have been avoided, and that such failure was negligence and directly caused plaintiff's injury. This might have been by sounding a bell in warning or slowing down gradually, or both. The evidence is not such, as appellant contends, that there was no reason or obligation to act until the automobile actually entered the pathway of the streetcar. We rule that plaintiff made a submissible case. This result is not contrary to the cases of Moore v. Ready Mixed Concrete Co., Mo., 329 S.W.2d 14, and Creech v. Riss & Co., Mo., 285 S.W.2d 554, the two cases cited by defendant on this question. The rule announced in these cases with respect to the evidence required and the manner of submission of lookout cases is consistent with what we have said herein. These and other cases have held that in a lookout submission it is not essential for an instruction to hypothesize the exact manner in which and the means by which defendant could have acted to avoid the collision so long as there was substantial evidence to support a reasonable finding that defendant had the means and ability to have so acted to avoid a collision. See also Boehm v. St. Louis Public Service Co., Mo., 368 S.W.2d 361.

Defendant also complains of Instruction No. 3 given on behalf of plaintiff. That instruction was as follows:

"The Court instructs the jury that if you find and believe from the evidence that at the time the operator reduced the speed of the streetcar suddenly, the Lofton automo-

bile was in close proximity to the path of said streetcar; and if you further find that prior thereto and at the time Mr. Lofton was starting to drive the automobile southwardly from the parking lot described in evidence and onto Olive Street, the operator of the streetcar, in the exercise of the highest degree of care for the safety of his passengers, could have observed said automobile moving southwardly in the direction of the eastbound streetcar tracks, and at that time said operator should have given a warning of the approach of the streetcar and should have reduced the speed of said streetcar so that the same could be decelerated or stopped gradually if danger of collision with said automobile did thereafter arise, but failed so to do; and if you further find that in so failing, said operator failed to exercise the highest degree of care for the safety of his passengers and was negligent; and if you further find that such negligence, if you so find, of said operator directly contributed in part to cause an emergency or danger of collision with said automobile which thereafter arose, if you do find that an emergency or danger of collision did thereafter arise, then you are instructed that said operator is not excused from his action in reducing the speed of the streetcar suddenly on the ground that he was confronted with a sudden emergency, if any, or because there was then danger of collision, if any, with said automobile."

▬▬ Defendant had given Instruction No. 2 which was a sudden emergency instruction. Instruction No. 3 was in response thereto and was intended to inform the jury that such emergency did not excuse defendant if negligence of defendant caused or contributed to cause the emergency. An instruction correctly so advising the jury would be proper. As we stated in Rohde v. St. Louis Public Service Co., Mo., 249 S.W.2d 417, 420, "The emergency doctrine has *no* application and may not be asserted if the emergency arises wholly or partially from the negligence of the one who seeks to invoke the doctrine." De-

fendant's complaint with respect to Instruction No. 3 is that it permitted the jury to render a verdict against defendant upon the mere finding that defendant's operator failed to take evasive action at a time when there was no danger of a collision. The instruction does tell the jury that if they find that the streetcar operator could have observed the automobile moving from the parking lot in the direction of the streetcar tracks, and further find that the operator should have given warning or slowed down so he could decelerate or stop *if danger of collision with said automobile did thereafter arise,* and that this was a failure to exercise the highest degree of care for the safety of the passengers and was negligence, then the operator was not excused by the sudden emergency. This language did not require a finding that there was a then existing danger of collision. Instead, it permits the jury to impose on the defendant a duty to act and thereby be able to avoid a collision *if danger thereof should arise thereafter.* Defendant complains that this is contrary to Stakelback v. Neff, Mo.App., 13 S.W.2d 575, 577, wherein the court said: "Counsel for defendant submit that the above instruction is fatally erroneous, in that it placed a greater duty upon defendant than that required of him by law. * * * The precise contention is that defendant was thus incorrectly charged with the duty of stopping, slackening the speed of, or swerving, his automobile, upon the mere appearance of the other car, whether the facts or circumstances were such as to give him reason to believe that a collision was imminent, or not." The court further went on to say: "We cannot escape the conclusion that defendant's complaint in this respect is well founded. * * * [T]here was nevertheless no duty upon defendant to take any of the precautions hypothesized therein, unless there was apparent danger of a collision, which basic fact the jury was not required to find. It cannot be said that the law imposes the duty upon the driver of an automobile, upon approaching

and entering an intersecting street, to stop, decrease the speed of, or change the course of, his car, merely because he sees another automobile in the street ahead of him. To the contrary, such duty to act would clearly not arise, unless the exercise of due care upon the part of the driver would lead him to believe that otherwise a collision would occur." The same rule is announced in Nydegger v. Mason, Mo., 315 S.W.2d 816.

 Instruction No. 3 does, in effect, tell the jury that they could ignore the matter of sudden emergency (which was submitted in Instruction No. 2) if they found that defendant's operator was negligent in not taking action so as to be able to avoid a collision if danger thereof subsequently arose. This was error. There would have been a duty on defendant's operator to take evasive action to avoid the collision and to avoid the necessity of a sudden stop, if possible, at such time as it was reasonably apparent that there was danger of a collision. Plaintiff would have been entitled to such an instruction telling the jury that if the sudden emergency was caused or contributed to by the negligence of the defendant, the sudden emergency could not be asserted. That duty did not arise, however, at a time when it was not reasonably apparent that there was danger of a collision and when the evasive action would only be taken on the basis that it would enable the operator to stop or slow gradually if danger thereafter arose.

Other errors are assigned by defendant as to other instructions, but these likely will not occur upon another trial, especially in view of the fact that instructions will be drafted on the basis of Missouri Approved Jury Instructions. For this reason we will not extend this opinion by consideration of objections to other instructions.

 Defendant's brief makes no claim whatsoever that the verdict is excessive, or that the measure of damage instruction was erroneous in any respect. Defendant's brief suggests that a new trial be limited to the issue of liability only, and plaintiff's brief has not taken issue with or opposed that suggestion. Section 512.160(3) RSMo 1959, V.A.M.S., provides, in part, that "no new trial shall be ordered as to issues in which no error appears." We have concluded, therefore, that the new trial should be limited to the issue of liability. Upon a retrial, if the verdict is for the plaintiff, the court shall enter a judgment in the sum of $10,000 against defendant herein.

The judgment is reversed and the cause remanded for a new trial upon the issue of liability only.

EAGER, C. J., STORCKMAN, HYDE, HOLMAN, and HENLEY, JJ., and STONE, Special J., concur.

DALTON, J., not sitting.