**HAWKEYE–SECURITY INSURANCE COMPANY, Plaintiff-Appellant,**

v.

**THOMAS GRAIN FUMIGANT COMPANY, a corporation, Defendant-Respondent.**

No. 24357.

Kansas City Court of Appeals.

Missouri.

Oct. 3, 1966.

James M. Shockey, Kansas City, Sprinkle, Carter, Sprinkle & Larson, Kansas City, of counsel, for appellant.

Thomas J. Leittem, Robert R. Raymond, Kansas City, Shughart, Thomson & Kilroy, Kansas City, of counsel, for respondent.

CROSS, Presiding Judge.

Plaintiff Hawkeye-Security Insurance Company sues defendant Thomas Grain Fumigant Company, a corporation, to recover the sum of $1861.00 which it had paid under a collision insurance coverage to an insured for damages to a 1961 Buick automobile. The loss resulted from a collision between the Buick automobile, which was owned and driven by plaintiff's insured, Carl A. Davis, and a two-ton G.M.C. truck owned by defendant, and operated by its employee, John Leathers. Plaintiff brought this action as subrogee of Mr. Davis. Trial to a jury resulted in a verdict for defendant and judgment accordingly. Plaintiff appeals.

The collision occurred on July 18, 1961, in the outside northbound lane of Interstate 29, a limited access highway, at a point approximately three-tenths of a mile north of Armour Road underpass in Clay County, Missouri. Interstate 29 is a four-lane highway with two northbound and two southbound lanes separated by a grass medial strip. There is a wide dirt or gravel shoulder next to the outside northbound lane. The testimony is in conflict as to whether visibility from Armour Road to the point of collision was clear and unobstructed and as

to whether the highway was straight or curved in the vicinity of the accident. The weather was clear and sunny and the concrete pavement was dry.

On behalf of plaintiff, Mr. Davis testified that he entered I–29 at the Armour Road entrance and proceeded north, traveling in the outside lane. He overtook a car, passed it on the left, and returned to the right-hand lane. He then saw defendant's truck on the right-hand shoulder of the northbound lane, approximately 300 to 400 feet ahead of him (to the north). At this point Mr. Davis's wife, his passenger, inquired, "Honey, do you see that truck?" Mr. Davis replied "Yes". Mr. Davis testified that when he first saw the truck it was in motion, "running—moving parallel with the highway" in a northerly direction, and that he was then three to four hundred feet south of the truck. "Anticipating" that he might have to move over into the left-hand lane, Davis looked in his rearview mirror and saw the car he had previously passed pulling out to pass him. Davis looked back north again and saw the truck pulling onto the highway from the shoulder. At approximately that point Davis's wife repeated her question and again received an affirmative answer. Davis was then between 100 to 125 feet behind the truck, traveling 45 to 50 miles an hour. He did not apply his brakes, but looked again in his mirror and saw that the car passing on his left was even with his rear wheels. He glanced forward again and saw that the truck was "dead stopped" on the highway or moving very slowly, but still made no brake application. For the third time Davis glanced in his mirror and saw that the car passing him was "right there with me". Then, for the first time, he applied his brakes. When he did so the Buick was "something less than around a hundred feet" behind the truck. After the car on the left had gone by, and at the "last moment" before the collision, Davis attempted to swerve to the left when his automobile was from 5 to 10 feet from the rear of the truck. The effort was unavailing and the Davis automobile, while still traveling about 35 miles per hour, struck the back end of the truck. Davis stated he did not sound his horn or swerve to the right onto the shoulder for fear of turning over. He also testified that he saw no signal from the truck, indicating it was about to enter the highway.

Mr. Leathers testified on behalf of defendant that, as its employee and the driver of the truck involved, he had been driving north on Interstate 29 prior to the accident, but had stopped on the right shoulder of the highway at the point above because he thought he had a flat tire. He stated he turned on the flashing left turn signal, got out of the truck, looked at his tires, re-entered the truck, and again turned on the left turn signal after accidentally bumping it off, gave a left turn hand signal, checked in his outside rearview mirror for traffic, saw none approaching, and proceeded to drive forward onto Interstate 29. After traveling 75 to 100 feet north in the right-hand northbound lane the truck was struck in the rear by the Davis automobile. The truck was then traveling at about 5 miles per hour. Mr. Leathers testified that prior to the collision he did not hear any horn signal and that after the impact he saw no cars pass his truck northbound.

The appeal issues primarily stem from complaints by plaintiff that Instruction No. Four is erroneous in the respects hereinafter discussed. The instruction was submitted by defendant as a contributory negligence instruction, and reads as follows:

*"Instruction No. 4*

"Your verdict must be for the defendant whether or nor defendant was negligent if you believe:

"First, Carl Davis, plaintiff's insured, either:

failed to keep a careful lookout, or

failed to stop, or

failed to slacken his speed, or

failed to swerve, or disregarded electric warning signals or arm signals given by defendant, and

"Second, Carl Davis's conduct, in any one or more of the respects submitted in paragraph First was negligent, and

"Third, such negligence of Carl Davis, plaintiff's insured, directly caused or directly contributed to cause any damage plaintiff may have sustained.

"M.A.I. 28.01".

It is apparent that the quoted instruction is a composite of (1) the submission "failed to keep a careful lookout" as set out in MAI form 28.01 entitled "Contributory Negligence—Generally", (2) the hypotheses that plaintiff's insured "failed to stop or failed to slacken his speed or failed to swerve" which appear to be adapted from MAI form 17.04 entitled "Verdict Directing—Failure to Act after Danger of Collision Apparent", and (3) an additional element—not derived from MAI—submitting the question whether plaintiff's insured "disregarded electric warning signals or arm signals given by defendant".

■ The propriety of the instruction is not challenged insofar as it submits the theory that plaintiff's insured failed to "keep a careful lookout". Certainly the instruction is not subject to criticism as to form, since it is composed in the exact language of MAI 28.01 (Contributory Negligence—Generally) and also comports with MAI 17.15 which is the approved form for a verdict directing instruction submitting a defendant's failure to keep a lookout. These forms employ only the simple language that plaintiff (or defendant) "failed to keep a careful lookout". In so drafting these forms the Committee recognized the prevailing rule that a submission so phrased is sufficient to authorize a jury finding of specific negligence in failing to keep a proper lookout, Jenkins v. Wabash Railroad Co., Mo.Sup., 322 S.W.2d 788, and that "[I]t is 'unnecessary to submit the further hypothesis that by keeping a proper look-out defendant could have seen plaintiff' or could have averted the collision". Lincoln v. Railway Express Agency, Inc., Mo.Sup., 359 S.W.2d 759.

■ Although Instruction No. 4 is proper in form, insofar as it submits the lookout issue, we do not approve of the trial court's action in giving it. As the MAI Committee comments, MAI p. 122, it is error to submit failure to keep a lookout unless there is evidence from which the jury could find that the party so charged could have, in the exercise of the highest degree of care, seen the object in question sooner than he did. Levin v. Caldwell et al., Mo.Sup., 285 S.W.2d 655; O'Neill v. Claypool, Mo.Sup., 341 S.W.2d 129. The evidence in this case does not warrant such finding. When plaintiff's insured Davis entered Highway 29 (at a point approximately three-tenths of a mile from the place of collision) he was traveling northward in the right-hand lane behind another car also proceeding north directly in the line of his vision forward. Davis passed that vehicle on the left, and returned to the right-hand lane. It is not shown how far he traveled in executing that maneuver, but it may reasonably be assumed to be some substantial distance. Davis testified that after so passing the other car and returning to the right-hand lane he saw defendant's truck on the shoulder ahead *for the first time* and that it was then approximately 300 to 400 feet in front of him. It is clearly shown and conceded by defendant that Davis thereafter constantly kept the truck in his view until the time of collision except for three momentary intervals when he glanced in his rearview mirror to observe the position of the car behind him. There is no basis of substantial evidence to support a finding that Davis could have seen the truck prior to the time he passed the automobile preceding him and in so doing obtained an unobstructed view in the direction of the parked truck.

Plaintiff's first complaint of error in the instruction is that it did not require the

jury to find that its insured knew or by the use of the highest degree of care could have known that there was a reasonable likelihood of collision—as a prerequisite to the permitted findings that "plaintiff's insured either—failed to stop or failed to slacken his speed, or failed to swerve  * * *".

It is plaintiff's position that the hypotheses "failed to stop, or failed to slacken his speed, or failed to swerve" are specific submissions of contributory negligence, separate and apart from "failed to keep a careful lookout", that the MAI Committee has formulated an approved instruction form (MAI 17.04) applicable for submission of those issues, in either verdict directing or contributory negligence instructions, and that such approved instruction, being applicable in this case, "shall be given to the exclusion of any other on the same subject".  Supreme Court Rule 70.01 (b), V.A.M.R.  Plaintiff insists that this direction has not been observed inasmuch as Instruction No. 4 does not include the essential element, required by the first paragraph of MAI form 17.04, that plaintiff's insured " * * * knew or by the use of the highest degree of care could have known that there was a reasonable likelihood of collision in time thereafter  * * *" to have averted such casualty by taking preventive action as hypothesized.

Defendant undertakes to account for the omission of the quoted preliminary finding by arguing that "Instruction Number Four is not MAI 17.04", but that instead it is a modification of MAI 28.01, and is primarily a "lookout instruction" as defined and approved in Moore v. Ready Mixed Concrete Company, Mo.Sup., 329 S.W.2d 14.  Relying principally on the authority of that case, defendant insists that the hypotheses of plaintiff's insured's failure "to stop  * * * slacken his speed  * * * or  * * * to swerve" do not constitute separate submissions of contributory negligence, but are a part of the "lookout" hypothesis, and that their effect was merely to restrict the jury to those specified acts in its determination

of the question whether Davis (if he had kept a careful lookout) could have avoided the collision.  Consequently, says defendant, it was not necessary that Instruction No. 4 include a finding that there was likelihood of collision.

In Moore v. Ready Mixed Concrete Company, supra, the case was submitted to the jury upon the primary negligence of a defendant in failing to keep a careful and vigilant lookout.  The verdict directing instruction hypothesized "that had defendant Wohlgemuth kept a careful and vigilant lookout  * * *  he should have seen plaintiff  * * *  in time thereafter  * * * to have stopped or slowed said concrete truck and have avoided the collision".  After analyzing the instruction the Supreme Court concluded on the basis of its grammatical structure that the only theory of negligence submitted by it was the defendant driver's failure to keep a lookout.  The court rejected plaintiff's contention that the language "stopped or slowed" injected additional elements of negligence, and ruled that the instruction did not require a finding of apparent danger.  The court said: "If the instruction had omitted the words 'stopped or slowed said concrete truck and have,' the portion under consideration would have read, 'in time thereafter for defendant Wohlgemuth to have avoided the collision.'  In that event the instruction would admittedly have been proper, and the jury could have found any means supported by the evidence by which the driver of the truck could have avoided the collision.  But plaintiff saw fit to restrict the jury to two means (stopping or slowing), both of which were supported by the evidence.  In so doing plaintiff did not inject additional elements of negligence into the submission but merely restricted the jury in its determination of the question as to whether the driver of the truck (if he had kept a careful lookout) could have avoided the collision.  Such was not prejudicial to defendants but, if anything, was beneficial to them.  The nature of the instant (lookout) submission is such that plaintiff was

not required to insert in the instruction the aforementioned finding which defendants contend should have been included therein (that there was apparent danger of a collision)".

The import of the language employed in Instruction No. 4 hypothesizing that plaintiff's insured "failed to stop, or failed to slacken his speed or failed to swerve" is readily distinguishable from the meaning ascribed by the Supreme Court to the qualifying and limiting phrase "in time thereafter * * * to have stopped or slowed said concrete truck" as contained in the Moore instruction. In the latter instance the references to "stopped or slowed" were in the nature of hypotheses which were "only evidentiary circumstances which the jury might consider in determining whether plaintiff discharged his legal duty to keep a lookout". Fontana v. Davis, Mo.App., 382 S.W.2d 835. Also see Horrell v. St. Louis Public Service Company, Mo.Sup., 277 S.W.2d 612. By contrast, Instruction No. 4 clearly and grammatically informed the jury that plaintiff was to be held contributorily negligent if he (negligently) "failed to stop or failed to slacken his speed or failed to swerve".

It is our conclusion that the "stop, or * * * slacken * * * or * * * swerve" postulates are no part of the lookout submission but that they inject into the instruction additional elements of hypothesized contributory negligence other than plaintiff's failure to keep a careful lookout. MAI 17.04 was specifically formulated and adopted for the submission of those issues, in either a verdict directing or a contributory negligence instruction. See Notes on Use, MAI p. 120. The complete text of MAI 17.04 is as follows:

"17.04. VERDICT DIRECTING— FAILURE TO ACT AFTER DANGER OF COLLISION APPARENT.

"Defendant knew or by the use of the highest degree of care could have known that there was a reasonable likelihood of collision in time thereafter to have (insert one or more of the following)

stopped

swerved

slackened his speed

sounded a warning

slackened his speed and swerved

slackened his speed and sounded a warning

swerved and sounded a warning

but defendant failed to do so".

■ MAI 17.04 was drafted in recognition of and in conformity with a well established rule of law which is stated as follows in Stakelback v. Neff, Mo.App., 13 S.W.2d 575:

"Even though it is true that this instruction counts upon primary negligence, and not the humanitarian doctrine, there was nevertheless no duty upon defendant to take any of the precautions hypothesized therein, unless there was apparent danger of a collision, * * *. It cannot be said that the law imposes the duty upon the driver of an automobile, upon approaching and entering an intersecting street, to stop, decrease the speed of, or change the course of, his car, merely because he sees another automobile in the street ahead of him. To the contrary, such duty to act would clearly not arise, unless the exercise of due care upon the part of the driver would lead him to believe that otherwise a collision would occur".

The foregoing was quoted with approval in Greenwood v. Bridgeways, Inc., Mo. App., 243 S.W.2d 111, where the court said:

"It is, of course, true that actionable negligence is the breach of a duty to protect another from injury, but the breach or failure to act must arise after the defendant has actual or imputed knowledge that his failure to do some act would be

likely to produce an injury to the plaintiff. Here the defendant's duty arose when he saw or by the exercise of the highest degree of care should have seen that the car in which the plaintiff was riding was likely to proceed into the path of the tractor. After this became or should have become apparent to defendant Johnson, the duty to slacken the speed of the tractor, change its course, or sound a warning, then arose and the jury should have been so instructed. Davidson v. St. Louis-San Francisco Ry. Co., Mo. Sup., 229 S.W. 786; Prague v. Eddy, 358 Mo. 327, 214 S.W.2d 521; Devoto v. St. Louis Public Service Co., Mo.App., 238 S.W.2d 66".

See the Committee's Comment on this question, MAI p. 120–121, and other cases there cited.

■■■ Civil Rule 70.01(b) requires that "Whenever Missouri Approved Instructions contains an instruction applicable in a particular case which the appropriate party requests or the court decides to submit, such instruction shall be given to the exclusion of any other on the same subject". Therefore, inasmuch as MAI 17.04 is applicable in this "particular case" for submission of the "stop * * * slacken * * swerve" issues, its use was mandatory under the quoted rule. The rule was observed to the extent that the theories of plaintiff's alleged negligence in failing to stop or slacken speed or swerve were appropriately hypothesized by Instruction No. 4 substantially in accordance with MAI 17.04, but was violated by the failure of the instruction to include the first paragraph of MAI 17.04 which would have required the jury to believe that "Defendant knew or by the use of the highest degree of care could have known that there was a reasonable likelihood of collision * * *" as a predicate of their finding that plaintiff's driver was negligent in failing to perform the evasive acts hypothesized. This violation of Rule 70.01(b) constitutes error, the

prejudicial effect of which is to be judicially determined. Civil Rule 70.01(c).

Defendant insists that no prejudice to plaintiff resulted from the omission of the likelihood of collision requirement because it would be "logically inconsistent to assume that a jury would find that a failure to take action before an apparent need for action could be a contributing cause to an accident". Defendant argues to the effect that the evidence overwhelmingly established that from the time plaintiff first saw the truck some 300 to 400 feet ahead of him he was aware that the two vehicles "were on a collision course". Hence, defendant says, it would be "superfluous" to include a "likelihood of collision element" in the instruction. Defendant cites and relies upon Witt v. Peterson, Mo.Sup., 310 S.W.2d 857, and Mullen v. St. Louis Public Service Company, Mo.Sup., 389 S.W.2d 838. Those cases do not support defendant's position.

The Witt case is an exception to the general rule exemplified by Stakelback. The two cases are distinguishable on dissimilar facts. In the Witt case the Supreme Court ruled a lookout instruction sufficient without requiring a preliminary finding that plaintiff had reason to believe a collision was imminent. The court said: "Under Instruction No. 5 the jury was asked to find whether or not plaintiff was negligent by driving into the intersection without maintaining any lookout ahead or laterally for defendant's car *after it was in the intersection traveling straight westwardly*. The uncontroverted evidence showed that both cars were traveling in straight paths that would inevitably cross and that while each was in the intersection it was visible to the other driver, if that other but looked. * * In view of the uncontroverted facts disclosed in the evidence and the limitations contained in the instruction we believe the instruction is sufficient in the complained of respect". Continuing, the court further commented in support of the ruling: "The Stakelback case, and its announced rule,

was discussed by this court in Taylor v. Alexander, supra (Mo.Sup., 283 S.W.2d 588), and what was said there distinguishes the Stakelback case from the present one. In DeVoto v. St. Louis Public Service Co., Mo.App., 251 S.W.2d 355, the same court that decided the Stakelback case was faced with about the same contention as plaintiff makes here, and likewise distinguished the two cases on substantially the same basis announced in the Taylor case and applicable to the instant case. See, also, Nelson v. Evans, 338 Mo. 991, 93 S.W.2d 691; Patton v. Hanson, Mo., 286 S.W.2d 829".

Manifestly the Witt ruling was based upon an admitted evidentiary situation which compelled the conclusion that a collision between the two automobiles traveling toward each other within an intersection, (which has been characterized by the Supreme Court as a "very narrow" zone of peril, Taylor v. Alexander, supra) was imminent and inevitable unless preventive action was taken. The evidence in this case is not of such nature. The zone of peril was not limited to the confines of an intersection but extended to a possible distance of at least 300 to 400 feet on an open interstate highway. When the truck first came into the view of plaintiff's insured, his automobile was traveling northbound on a through-traveled lane of the highway —the truck moving slowly northbound on the adjacent shoulder the stated distance ahead. Certainly under those circumstances it cannot be said that the two vehicles were traveling in paths that would inevitably intersect. The Stakelback rule which MAI has adopted—not the Witt case—governs the instant question. As for the Mullen case, defendant apparently misconceives its effect. The Supreme Court there held that no duty on the part of a street car operator arose at a time "when it was not reasonably apparent that there was danger of a collision".

■ Inasmuch as plaintiff was entitled to a jury determination of the question whether Davis knew or should have known there was a reasonable likelihood of collision in time to have averted it, by taking action as hypothesized, we rule that the error resulting from the instruction's failure to require such finding was prejudicial.

Plaintiff additionally contends that Instruction No. 4 is erroneous because it authorized the jury to find for defendant if they believed that plaintiff's insured "disregarded electric warning signals or arm signals given by defendant". Plaintiff argues that the quoted element "presupposes a duty upon plaintiff's insured to yield the right of way" without any guide to the jury as to right of way or duty to yield.

Preliminary to discussion of the instruction segment before us, we deem it advisable to consider the meaning of the words "disregarded electric warning signals or arm signals given by defendant". It is obvious that the only word requiring specific definition is the word "disregarded". Webster's New International Dictionary, 2d Edition, defines "disregard" as "not to regard; to pay no heed to; to fail to notice or observe; hence to slight as unworthy of regard or notice". It appears to us that "disregarded" was used in the sense of having paid no heed to, rather than to connote failure to notice or observe as an act of visual perception, since the latter consideration was submitted by the lookout portion of the instruction. Therefore, the clause in question is subject to the reasonable interpretation that plaintiff's insured (negligently) paid no heed to electric warning signals or arm signals given by defendant.

Under the circumstances of the case it is obvious that Davis could not have paid effective heed to the signals by the mere act of looking at them, but that some positive preventive action on his part was necessary to satisfy the requirement of the instruction. Thus, we conclude that the hypothesis " * * * plaintiff's insured disregarded * * * signals * * * is only a *general* submission to the effect that plaintiff failed to utilize available means at

hand that could or might have averted the collision. We believe the jury would likewise have the same understanding of the instruction.

■■ It is elementary that "[b]oth judge and jury are * * * component parts of that intangible thing or entity called the court, and neither * * * may invade or trespass upon the special field and province of the other". State ex rel. Witte Hardware Co. v. McElhinney, 231 Mo.App. 860, 100 S.W.2d 36. The jury are the triers of the facts but the law of the case is the sole responsibility of the court. "No encroachment should be suffered by either tribunal upon the other, for in this way is justice best administered". McPeak v. Missouri Pacific R. Co., 128 Mo. 617, 30 S.W. 170. This traditional division of trial responsibility has been breached in this case. By including the "disregarded * * signals * * *" element in Instruction No. 4, the trial court abdicated to the jury its essential function of declaring the law of the case by defining the facts that were for the jury's determination under the pleadings and the evidence.

■ The submission is fundamentally erroneous because it gives the jury no guidance on the issues involved but invites them to speculate as to what acts or conduct on the part of Davis would constitute contributory negligence. Owens v. McCleary, 313 Mo. 213, 281 S.W. 682. See 1 Raymond's Missouri Instructions, Permanent Edition, Sec. 105, p. 102; Sec. 130, p. 118. "An instruction, on a plaintiff's contributory negligence, 'is too general' and 'amounts to what is commonly termed a roving commission' when 'it fails to advise the jury, or point out in any way, what acts or omissions on the part of plaintiff, if any, found

by them from the evidence, would constitute contributory negligence.' Clason v. Lenz, 332 Mo. 1113, 61 S.W.2d 727, 730; Schide v. Gottschick, 329 Mo. 64, 43 S.W.2d 777; Bobos v. Krey Packing Co., 317 Mo. 108, 296 S.W. 157; Owens v. McCleary, 313 Mo. 213, 281 S.W. 682; Hanke v. St. Louis, Mo.Sup., 272 S.W. 933, and cases cited; Lunsford v. Macon Produce Co., Mo.App., 260 S.W. 781. These authorities say that this is prejudicial to plaintiff because it permits the jury to find contributory negligence against plaintiff 'on any theory of negligence which they could construct or evolve out of their own minds'". Pearrow v. Thompson, 343 Mo. 490, 121 S. W.2d 811; also see: Benham v. McCoy, Mo. Sup., 213 S.W.2d 914; Watts v. Moussette, 337 Mo. 533, 85 S.W.2d 487.

Thus we are necessarily bound to view the "disregarded—signals" charge as a "roving commission" granting the jury unlimited license to find Davis guilty of contributory negligence on any theory of their own invention. This improvident delegation of authority permitted them to make such a finding if they believed Davis (a) failed to give defendant's truck driver a warning signal (a theory that was not developed or relied upon by defendant); (b) failed to yield the right of way,[1] or (c) failed to keep a vigilant lookout (a submission we have held to be unsupported by the evidence). Any one of those findings would have been erroneous and prejudicial to plaintiff.

The "disregarded—signals" submission is prejudicially erroneous additionally because (1) it assumes as a fact instead of requiring the jury to find that electric and hand signals were given by defendant's truck driver and (2) it does not require a finding that there was apparent danger of a

1. See 29 A.L.R.2d 107 Anno.: Parked Automobile—Pulling Out, which contains the following statement (l. c. p. 112): "In cases dealing with injury or damage resulting from the movement of a motor vehicle which had been parked at the curb of a street or on the shoulder of a highway the courts have concurred in recognizing that the operator of such a parked car is under a duty of yielding the right of way in the travelled portion of the street or highway to pedestrians or other motor vehicles which are moving thereon at the time, * * *".

collision as a predicate to the performance of some evasive action on the part of Davis, other than to stop, slow or swerve, which the jury might have considered to be his legal duty under some theory they may have evolved under the instruction.

Accordingly, the judgment is reversed and the cause remanded for a new trial.

All concur.